COPENHAVER et al., Respondents, *v.* NORTHERN
PACIFIC RAILWAY CO., Appellant.

(No. 2,908.)

(Submitted December 20, 1910.   Decided January 16, 1911.)

[113 Pac. 467.]

*Master and Servant—Railroads—Personal Injuries—Expert and
Opinion Evidence—Instructions.*

Evidence—Examination of Expert—Responsiveness of Answer.
  1.  In an action for the death of a railroad engineer by the explosion
  of a boiler, an expert witness was asked what in his opinion was the
  cause of the explosion, and, after stating the cause, the witness con-
  tinued that the boiler-maker, instead of going to work to inspect the
  boiler "and see if those bolts would stand another hammering, which
  would be done the proper way by having another man holding on the
  other end of the bolts, and split that thread on the inside of the crown
  sheet." *Held,* that the court improperly refused to strike out as not
  responsive that part of the answer relating to what the boiler-maker
  should have done.

Appeal and Error—Harmless Error—Admission of Evidence—Irresponsive
  Answers.
  2.  Such error could not have prejudiced defendant railroad company,
  where the proper manner of repairing the boiler and fire-box was shown
  at length by both parties.

Evidence—Expert Testimony.
  3.  Revised Codes, section 7887, permitting a witness to give his opin-
  ion of a question of science, art, or trade, when he is skilled therein,
  means that an expert witness may give his opinion upon or about a
  question of science, art or trade.

Same—Opinion Evidence—Expert Testimony—Subjects.
  4.  Where, though the conclusions to be drawn depend upon facts pecu-
  liarly within the knowledge of persons whose experience or study
  enables them to speak authoritatively upon the subject, the jury are
  able intelligently to draw conclusions from such facts when testified to
  by experts, it is their sole province to do so; but if the conclusions to
  be drawn, as well as facts, depend upon professional or scientific knowl-
  edge, which one of ordinary training or intelligence does not have, the
  expert witnesses may give their conclusions from the facts as well as
  testify to the facts themselves.

Same.
  5.  A witness could testify as to whether a railroad engine boiler was
  in a reasonably safe condition for use, after it had been repaired by
  placing a patch on the flange joining the flue-sheet and the crown-
  sheet, where the question depended on whether the patch had been
  properly put on, since the jury might not be able to intelligently draw
  a conclusion on that question even if the condition of the boiler was
  shown by the evidence.

Same—Conclusions—Negligence.
  6.  Where it was a proper subject of expert testimony whether a boiler
  was in a reasonably safe condition for use after it was repaired, the

expert could testify that it was negligence to use the boiler in that condition, the value of his opinion being for the jury.

Same—Expert Testimony—Province of Court.

7. It is for the trial court to determine in the first instance whether a subject is proper for expert testimony, and when it cannot say as a matter of law that the jurors are as competent to determine the question as experts having a special knowledge, gained from experience, expert testimony may be admitted.

Appeal and Error—Harmless Error.

8. Revised Codes, section 6593, prohibiting a reversal because of error in the proceedings which does not affect the substantial rights of the parties, was intended to prevent reversals of cases wherein substantial justice was done at trial, and to speedily terminate litigation, where that can be done without working injustice.

Same—Harmless Error—Admission of Evidence.

9. Where every opportunity was given the parties to thoroughly investigate, by offering expert testimony, the causes of a boiler explosion, and no competent testimony on the subject was excluded, the fact that defendant was compelled to rebut expert testimony offered by plaintiff and erroneously admitted, by offering other expert testimony, was not ground for reversing a judgment for plaintiff; the expert testimony on the subject being sharply conflicting, and the jury having found for plaintiff after inspecting the wrecked boiler.

Trial—Evidence—Motion to Strike—Sufficiency.

10. Defendant railroad company cannot complain, in an action for an engineer's death caused by the explosion of a boiler, of a ruling denying the quoted part of a motion to strike from the record "all of the testimony relating to the alleged defects in the boiler, except that relating to the patch and the cracks," and especially the testimony relating to the defective stay-bolts, for the reason that it in no manner relates to the explosion as a producing cause; the motion not being sufficiently specific to include evidence as to any part of the boiler, except that relating to the stay-bolts, which latter evidence was stricken.

Master and Servant—Injuries—Actions—Admission of Evidence.

11. In an action against a railroad company for an engineer's death from a boiler explosion, it was proper to exclude evidence that there was a popular but erroneous impression that metal with holes in it, when heated, expanded toward the holes and made them smaller; the popular impression being immaterial.

Same—Instructions—Conformity to Evidence.

12. Where, in an action for a railroad engineer's death from a boiler explosion, the complaint alleged generally that the boiler was worn out and defective, and there was no motion to make the allegation more specific, and a number of witnesses testified that each of several defects named contributed more or less to make the boiler weak and unsafe, a requested instruction, that the jury should not consider any defects determining the cause of the explosion unless they believed that the explosion would not have occurred without such defects, was properly refused, as any defect which contributed generally to the unsafe condition of the boiler was a proximate cause of the explosion, though it alone would not have caused the explosion.

*Appeal from District Court, Lewis and Clark County; J. Miller Smith, Judge.*

Action by Nellie M. Copenhaver and another against the Northern Pacific Railway Company. From a judgment for plaintiffs and an order denying a new trial, defendant appeals. Affirmed.

*Mr. Wm. Wallace, Jr., Mr. John G. Brown,* and *Mr. R. F. Gaines* submitted a brief in behalf of Appellant. Oral argument by *Mr. Brown.*

The court erred in permitting plaintiff's witnesses to testify that in their judgment the boiler in question "was not reasonably safe." Even though a jury may be ignorant of fact, conditions and their result, or unable to appreciate their probative value as conceded facts, if they can be informed of these by evidence during the course of a trial so as to reach a conclusion from them, as was the case here, and as was done, then the subject is not one for expert opinion. (*Gas Co.* v. *Meitke,* 35 Ill. App. 629; *Muldowney* v. *Railway Co.,* 36 Iowa, 462; *Read* v. *Land Co.,* 66 Neb. 423, 92 N. W. 622; *Roberts* v. *Railway Co.,* 128 N. Y. 455, 28 N. E. 486, 13 L. R. A. 499; *Brown* v. *Doubleday,* 61 Vt. 523, 17 Atl. 135; *Berckmans* v. *Berckmans,* 16 N. J. Eq. 122; *Schmick* v. *Noel,* 72 Tex. 1, 8 S. W. 83; *Musick* v. *Latrobe,* 184 Pa. 375, 39 Atl. 226.) The witnesses here were asked to give their conclusions based upon their individual experiences and individual view points. It was not upon matters either incapable of proof or which the jury were incapable of appreciating. Nor can the excuse be offered that it was on an important or immaterial issue. It was not only related to the material issue, but it was the issue between the parties. That it was error to permit them to answer, see *O'Dogherty* v. *Postal Co.,* 113 App. Div. 636, 99 N. Y. Supp. 351; *Tighe* v. *Atchison etc. Co.* (Mo. App.), 107 S. W. 1034; *Milwaukee & St. P. R. R. Co.* v. *Kellogg,* 94 U. S. 469, 24 L. Ed. 256; *Sappenfield* v. *Main St. etc. R. Co.,* 91 Cal. 48, 27 Pac. 590; *Pachec* v. *Judson Co.,* 113 Cal. 541, 45 Pac. 833; *Camp* v. *Hall,* 39 Fla. 545, 22 South. 792; *Hunt* v. *Kile,* 98 Fed. 49, 38 C. C. A. 641; *People* v. *Detroit etc. Co.,* 125 Mich. 366, 84 N. W. 290. The question

whether or not a certain "cattle-guard was sufficient to prevent animals from getting on the right of way, etc.," has been held to be an improper question. (*Smead* v. *Railroad,* 58 Mich. 200, 24 N. W. 761.) Whether or not there was sufficient room between a barrel and a wall for a man to walk with safety has been held to be an improper question. (*Brunker* v. *Cummins,* 133 Ind. 443, 32 N. E. 732.) A question whether or not there was water enough in a ditch to irrigate lands theretofore irrigated was held improper, because it was the very substance of the issue. (*Combs* v. *Ditch Co.,* 17 Colo. 146, 31 Am. St. Rep. 275, 28 Pac. 966.) Whether or not it was negligence to stand in front of a moving car was for the jury to determine and not an expert. (*Hamilton* v. *Mining Co.,* 108 Mo. 364, 18 S. W. 977; see, also, *Black* v. *Telephone Co.,* 26 Utah, 451, 73 Pac. 514.) "The alleged incompetency and carelessness of A. being issues in the case, they were questions for the jury to determine. It was error to permit the witnesses, over appellant's objection, to state their conclusions and give their opinions on these issues." (*Stoll* v. *Mining Co.,* 19 Utah, 271, 57 Pac. 295.) It has also been held error to allow any opinion, either expert or non-expert, as to whether or not an opening was safely protected. (*Shelley* v. *Austin,* 74 Tex. 608, 12 N. W. 753.) It has been frequently held that expert opinion as to the safety of an instrument cannot be received, as applied to a road (*Rowe* v. *Railway,* 82 Md. 493, 33 Atl. 761), sidewalk (*Lindley* v. *Detroit,* 131 Mich. 8, 90 N. W. 665), track (*Childress* v. *Railway,* 94 Va. 186, 26 S. E. 424), machinery (*Indiana Coal Co.* v. *Buffey,* 28 Ind. App. 108, 62 N. E. 279; *Houston* v. *Brush,* 66 Vt. 331, 29 Atl. 380), a switch (*Luman* v. *Mining Co.,* 140 Cal. 700, 74 Pac. 307). This court has also passed upon the question. (See *Cummings* v. *Reins Copper Co.,* 40 Mont. 599, 107 Pac. 904; *Metz* v. *City of Butte,* 27 Mont. 506, 71 Pac. 761; *State* v. *Giroux,* 19 Mont. 149, 47 Pac. 798.)

That it was error to exclude the testimony offered to be given by witness Blake, see *Western etc. Co.* v. *Prohlman Co.,* 83 Fed. 811, 28 C. C. A. 157, 40 L. R. A. 561; *Railway* v. *Finlayson,* 16

Neb. 578, 49 Am. Rep. 724, 20 N. W. 860; *Garwood* v. *Railway,* 45 Hun, 128.

Upon the fact issues having to do with the alleged defects in the boiler, the defendant offered instructions in effect telling the jury that before they could consider these alleged defects, the plaintiff should prove not only that they had existed and were discoverable, but that it was a weakness without which the explosion could not have happened. The court over objection struck out the words "and without which the explosion would not have happened." The question is whether or not the several acts of negligence complained of were the producing cause of the explosion. Nothing can be deemed the proximate cause of the accident unless, had it not happened, the accident would not have occurred. The proximate cause of an injury is that which in a natural and continuous sequence, unbroken by any new, independent cause, produces the injury, and without which the injury would not have occurred. (*Mize* v. *Rocky M. B. T. Co.,* 38 Mont. 531, 129 Am. St. Rep. 659, 100 Pac. 971, 16 Ann. Cas. 1189.)   While it is true that it is not necessary to show the direct connection with reference to the time between the acts complained of and the injury, it must be shown before the act can be held a recoverable one, and that without it the accident would not or could not have happened. (*Deming* v. *Merchants' Co.,* 90 Tenn. 306, 17 S. W. 89, 13 L. R. A. 518; *Lindvall* v. *Woods,* 44 Fed. 855; *Simons* v. *Railway,* 96 Va. 152, 31 S. E. 7; *Strobeck* v. *Bren,* 93 Minn. 428, 101 N. W. 795; *Ramsbottom* v. *Railway,* 138 N. C. 38, 50 S. E. 448; *Harton* v. *Tel. Co.,* 141 N. C. 455, 54 S. E. 299; *Schwartz* v. *Shull,* 45 W. Va. 405, 31 S. E. 914; *Siegel* v. *Treka,* 218 Ill. 559, 109 Am. St. Rep. 302, 75 N. E. 1053, 2 L. R. A., n. s., 647; *Railway* v. *Black* (Tex. Civ. App.), 44 S. W. 673.)

The offered instruction that the defendant under the existing circumstances was not required to make such an inspection of its machinery as to interfere with the reasonable or to be expected operation of its business, but only such as would represent reasonable care on its part should have been given. (*Railway*

*Co.* v. *Bates,* 146 Ind. 564, 45 N. E. 108; *Railway* v. *Hughes,* 119 Pa. 301, 13 Atl. 286; *Kanz* v. *Page,* 168 Mass. 217, 46 N. E. 620; *Railway Co.* v. *Barret,* 166 U. S. 617, 17 Sup. Ct. Rep. 707, 41 L. Ed. 1136.)    In railway cases it has been frequently held that a master is not required to remove parts of a car enroute to detect possible defects.    (*O'Graff* v. *Railway Co.,* 72 App. Div. 76, 76 N. Y. Supp. 125; *Railway Co.* v. *Campbell,* 97 Ala. 147, 12 South. 574.)    So, too, on principle has it been held that a master is not held to an inspection which would destroy the usefulness of the thing itself.    (*Essex etc.* v. *Kelly,* 57 N. J. L. 100, 29 Atl. 427; *Warer* v. *Railway Co.,* 39 N. Y. 468.)

In behalf of Respondent, there was a brief by *Mr. James A. Walsh,* and *Mr. S. A. Anderson.*    *Mr. Anderson* argued the cause orally.

Subdivision 9 of section 7887 of the Revised Codes provides that a witness may give his opinion on questions of science, art or trade when he is skilled therein.    This is a crystallization of the rule that has been adopted and enforced by courts from time immemorial.    The general rule is that when the question to be determined is not within the knowledge of men of common experience or of ordinary education, but relates to some art, calling or trade, expert testimony may be given; that is, a witness may give "his opinion on questions of science, art or trade when he is skilled therein."    (*Yergy* v. *Helena Light & Ry. Co.,* 39 Mont. 213, at p. 224, 102 Pac. 310.)    This is the universal rule, and unless there is an abuse of discretion, the ruling will not be disturbed.    (See, also, *Coleman* v. *Perry,* 28 Mont. 1, 72 Pac. 42.)    The case of *Cummings* v. *Reins,* cited by appellant, related to the effect of a rope without a chain attachment; the case of *Metz* v. *City of Butte,* related to the construction of a sidewalk, and the question in *State* v. *Giroux* was whether the father or mother was the more suitable custodian of a minor child.    These questions cannot be compared with the question of the construction, use and operation of complicated machinery.    Every business or employment requiring peculiar knowl-

edge or experience, and which has a particular class of persons devoted to its pursuit, is an art or trade, and any person who, by study or experience, has acquired this peculiar knowledge and particular skill, may be allowed to give in evidence his opinions upon such matters of peculiar knowledge and skill. (*Chandler* v. *Thompson*, 30 Fed. 38.)

The opinions of the witnesses were not given, and were not taken by the jury as conclusive, but only as aids to them in arriving at a correct conclusion. And when the inquiry is whether a machine is properly constructed or is suitable for the use to which it is put, whether it can be operated without danger or in what respects it would be dangerous to the one operating it, there can be no doubt that the testimony of experts will readily be competent. (*Hutchinson Cooperage Co.* v. *Snider*, 107 Fed. 633, 46 C. C. A. 517; *Daly* v. *City of Milwaukee*, 103 Wis. 588, 79 N. W. 752; *Transportation Line* v. *Hope*, 95 U. S. 297, 24 L. Ed. 477; *Webster Mfg. Co.* v. *Mulvanny*, 168 Ill. 311, 48 N. E. 168.) Testimony of this character was admitted as follows in the following cases: Whether mode of constructing machinery was reasonably safe. (*Gundlatch* v. *Schott*, 192 Ill. 509, 85 Am. St. Rep. 348, 61 N. E. 332.) Whether an iron crank or handle was properly welded. (*Murphy* v. *Marston Coal Co.*, 183 Mass. 385, 67 N. E. 342.) As to the cause of explosion of boiler and whether safety valve had been negligently or unskillfully repaired. (*Beunk* v. *Valley City Desk Co.*, 128 Mich. 562, 87 N. W. 793.) Whether a bundle carrier was of approved character. (*Byard* v. *Palace Clothing House Co.*, 85 Minn. 363, 88 N. W. 998.) As to customary way of doing work, (*Carlin* v. *Kennedy*, 97 Minn. 141, 106 N. W. 340.) As to the safety of a roof of a mine. (*Central Coal & Coke Co.* v. *Williams*, 173 Fed. 337.) That he examined the roof of a mine in the morning and found it safe. (*Cotten* v. *Central Coal Mining Co.* (Iowa), 123 N. W. 381.) Whether an appliance is reasonably safe. (*Warner* v. *Jnunesse* (Ky. App.), 122 S. W. 862; *Louisville Veneer Mills Co.* v. *Clemonts*, 33 Ky. Law Rep. 106, 109 S. W. 308.) What is a sufficient railroad track, whether it

is reasonably safe. (*Stewart* v. *Louisville & N. Ry. Co.,* 136 Ky. 717, 125 S. W. 154.) Whether or not it is feasible to install a grade crossing at a particular place. (*Gulf C. S. F. Ry. Co.* v. *Belton,* 122 S. W. 413.) That a building was constructed according to contract. (*J. F. Stark Grain Co.* v. *Bruster,* 122 S. W. 947.) Proper equipment of street-cars. (*Fisher* v. *Warpecker E. B. Ry. Co.,* 124 N. W. 1005.) As to the cause of physical condition. (*Sutter* v. *Kansas City,* 119 S. W. 1084.) As to the condition of a mine; whether it could be discovered by inspection. (*Sloss* v. *Shaffield S. & I. Co.* v. *Green,* 49 South. 301.) That a person suffered pain since injury, a doctor testifying. (*Greenway* v. *Taylor Co.,* 122 N. W. 943.) Effect of application of a brake on a car; the effect of reversal of power, proper manner of operating car approaching curve. (*McGrew* v. *C. & N. E. Ry. Co.,* 142 Ill. App. 210.) Proper method of doing work, and tools and appliances that are necessary. (*Morris* v. *Williams,* 143 Ill. App. 140.) Whether a stream is floatable for logs. (*H. S. L. Co.* v. *Revercomb,* 110 Va. 240, 65 S. E. 557.) Difference between engines. (*Penn Co.* v. *Whitney,* 169 Fed. 572.) That an engine and boiler were properly set up. (*Adams Machine Co.* v. *Turner,* 162 Ala. 351, 136 Am. St. Rep. 28, 50 South. 308.) Use of gauges on circular saws. (*L'Holte* v. *Dibblen Lumber Co.,* 202 Mass. 294, 89 N. E. 532.) Whether dangerous to change gearing with belt on the loose pulley when starting machinery. (*Morrisett* v. *Elizabeth City C. M. Co.,* 151 N. C. 31, 65 S. E. 514.) Distance within which a train could be stopped. (*Chesapeake Ry. Co.* v. *Lange,* 135 Ky. 76, 121 S. W. 933.) How far sparks will carry from an engine in proper order. (*Potter* v. *Grand Trunk Ry. Co.,* 121 N. W. 808.) Proper steps for an employee to take in passing from one car to another. (*Missouri Ry. Co.* v. *Merrill,* 60 Pac. 819.) As to the relative strength of wrought and cast iron material. (*McFaul* v. *Flume Co.,* 66 Pac. 308.) Whether a bolt and nut were sufficient. (*Snyder* v. *Holt Mfg. Co.,* 66 Pac. 311.) Whether a building was properly constructed to sustain the weight, or whether the cap was properly constructed. (*Callan*

v. *Bull*, 45 Pac. 1017.) That a certain machine was impractical and dangerous. (*Hutchinson Cooperage Co.* v. *Snyder, supra.*) That he would have known that a machine with a broken slate was dangerous. (*Blumenthal* v. *Craig*, 81 Fed. 320, 26 C. C. A. 427.) Concerning the proper manner to erect tell-tales over each side of a bridge. (*Pittsburg Ry. Co.* v. *Lamphere*, 137 Fed. 20, 69 C. C. A. 542.) As to the safe method of constructing platforms, with reference to track. (*Illinois Cent. Ry. Co.* v. *Davidson*, 76 Fed. 517, 22 C. C. A. 306.) That a spark-arrester was in first-class condition on a locomotive and would prevent sparks from escaping. (*Kansas City Ry. Co.* v. *Blaker & Co.*, 68 Kan. 244, 75 Pac. 71, 64 L. R. A. 81, 1 Ann. Cas. 883.) As to the effect of the breaking of a pivot on an unevenly balanced derrick; the effect on the pivot of the fall of the derrick, or whether the one in use was sufficient for the purpose for which it was designed. (*Dyas* v. *Southern Pac. Ry. Co.*, 140 Cal. 296, 73 Pac. 972; see, also, *McFaul* v. *Madera Flume & Trading Co.*, 134 Cal. 313, 66 Pac. 308; *Snyder* v. *Holt Mfg. Co.*, 134 Cal. 324, 66 Pac. 311; *Williamson Iron Co.* v. *McQueen*, 144 Ala. 265, 40 South. 306; *Palmquist* v. *M. S. Supply Co.*, 25 Utah, 257, 70 Pac. 994; *Anderson* v. *Fielding*, 92 Minn. 42, 104 Am. St. Rep. 665, 99 N. W. 357; *Finn* v. *Cassidy*, 165 N. Y. 584, 59 N. E. 311, 53 L. R. A. 877; *Cochran* v. *Sess*, 168 N. Y. 372, 61 N. E. 639; *Jenks* v. *Thompson*, 179 N. Y. 20, 71 N. E. 266; *Hayes* v. *S. P. Ry. Co.*, 17 Utah, 99, 53 Pac. 1001; *Hamner* v. *Janowitz*, 131 Iowa, 20, 108 N. W. 109.)

MR. JUSTICE SMITH delivered the opinion of the court.

On December 6, 1907, near the station of Mace, in the state of Idaho, locomotive engine No. 79 belonging to the defendant railway company exploded, so injuring the engineer, William Copenhaver, that he died some days later. His fireman, Buls, was also killed. This action is prosecuted by Copenhaver's wife and minor son to recover damages sustained by his death. A jury fixed such damages at $12,000, and judgment was entered

accordingly. From the judgment and an order denying a new trial, defendant has appealed.

The complaint charges that "the boiler and parts thereof were in a dangerous, defective, and worn-out condition and wholly unfit for the uses to which they were put at the time of said accident." No specific defect is mentioned. There was testimony to the effect that the crown-sheet of the engine had been burned about a week or ten days prior to the explosion while the machine was in the roundhouse at Wallace. Considerable doubt was thrown upon the truth of this testimony by other evidence in the case; but we cannot say that its probative force was entirely destroyed. That was a question for the jury to decide. There was an old patch on the flange joining the flue-sheet and the crown-sheet of the engine. It was placed on the outside of the fire-box, and plaintiffs' witnesses declared that it should have been placed on the inside. Seven flues had been removed at the point in question, and the flue holes filled or plugged by placing "sunflowers" therein. One of the principal points in issue was whether the patch was properly put on. After the explosion a part of it remained attached to the crown-sheet, showing that it had been torn apart. Whether the patch was cracked before the explosion occurred was also a mooted question at the trial. Whether the removal of so many flues weakened the holding power of the patch and the flue-sheet was also contested. The engine leaked very badly in the fire-box for some time prior to the accident. It was conceded by both sides that the flues leaked and had been frequently caulked; but there was testimony to the effect that this would not tend to cause an explosion. Whether the crown-sheet leaked was a mooted question. Some time after the explosion it was found that three radial bolts or stays, designed to support and strengthen the crown-sheet, were missing from the wrecked boiler. Whether they were broken off before the explosion or cut off after that event was also an issue. One of defendant's witnesses testified that he cut them off after the explosion, and this testimony was corroborated. There was also a sharp difference of opinion be-

tween the witnesses on the respective sides as to whether or not the defective portion of the flange should have been removed before the patch was put on, plaintiffs' witnesses testifying that it should have been, and defendant's maintaining that the boiler was strengthened by placing the patch over the defective part without cutting out any portion of it.   Defendant's position was well defined.   Its counsel maintained and claim to have proven that the explosion started in that portion of the crown-sheet at least twelve inches distant from the flange, where the sheet had been burned just prior to the explosion, by Copenhaver allowing the water to get so low that it failed to cover the crown-sheet, which consequently became red hot, stretched, sagged, pressed downward away from the crown bolts, causing a cupped appearance between the bolt holes, and finally gave way.   It was claimed that the tear or hole extended to the patch on the flange, thus causing that piece of metal to be torn apart.   Defendant claimed that the appearance of the crown-sheet indicated a burning just prior to the explosion; but this was contradicted by plaintiffs' witnesses.   On the part of plaintiffs it was claimed, in effect, that on account of the defective conditions existing in the flue-sheet and crown-sheet, including the flange by which they were joined and the patch thereon, caused by negligent repairing and negligent failure to keep in a reasonably safe condition generally, the parts became so weak that they could not sustain the pressure of steam which the engine was designed to carry, and the explosion resulted.   One of plaintiffs' witnesses testified: ''The defects of the boiler was the general cause of the explosion.   There were three defects that would cause the explosion itself.   These are: The crack in the flange, these loose radial stays, and those broken stay bolts.''   Consideration of broken stay bolts was afterward withdrawn from the jury. Another witness said: ''I think the boiler gave way at the patch where those two fire cracks were in the vicinity of the broken radial bolts.   The explosion was due to the bad condition of the patch and the broken radial bolts.   I think the crown-sheet was covered with water at the time of the explosion.   Taking out

seven flues weakens the boiler. You should put in a new. flue-sheet." Another said: "I rode with Copenhaver on the engine from Wallace to Mace. I noticed the water in the water-glass from time to time, and that it ran from two-thirds full to full and that it moved up and down. As I got off the engine at Mace where I could see the water-glass, it was two-thirds full, and the water vibrated; that is, it moved up and down, and when you see water in the glass it is all right. It was eight or ten minutes from the time I got off until the explosion occurred. I saw Copenhaver using the injector on the way to Mace a number of times." Several of the defendant's expert witnesses testified that low water on the front end of the crown-sheet caused the explosion. They also said that the removal of seven flues would not weaken the boiler. There was also testimony to the effect that the top flues "showed that they had been over-heated and wilted down from low water." The actual distance from Mace station to the place of the explosion was shown to be 2,247 feet.

1. Plaintiffs' witness Schelega, an expert boiler-maker, familiar with boiler construction and repairs, made this statement: "The defective portion should be cut out so that the water could get to the patch, and, for another reason, that the crack could not extend any farther. This patch was not put on in the usual and customary method of patching these kinds of defects." He was then allowed to answer this question, over objection: "State whether or not, in your opinion, it is a reasonably safe way in which to make this repair." He answered: "It was unsafe." This question was also objected to: "Mr. Schelega, taking into consideration these various conditions of this engine boiler, as described by you to have existed before this explosion, and basing your opinion upon those conditions that you have testified to as existing, you may state whether, in your opinion, that boiler was in a reasonably safe condition for use on December 6, 1907." The answer was: "The boiler was in an unsafe condition." A third question was asked: "Basing your opinion upon your examination of this boiler and the vari-

ous parts, and what you discovered, state what, in your opinion, was the cause of this explosion." Substantially the same objection was interposed and overruled, and the witness answered: "The engine must have been burned some time before the explosion; by the contraction of the crown-sheet, the crown-bolts got loosened. The boiler-maker in charge, instead of going to work to inspect it and see if those bolts would stand another hammering, which would be done the proper way by having another man holding on the other end of the bolts, and split that thread on the inside of the crown-sheet." Defendant's counsel moved to strike out that portion of the answer relating to what the boiler-maker should have done as not responsive to the question. The motion was overruled. We think the ruling was technically erroneous; but, in view of the exhaustive inquiry prosecuted by both sides as to the proper manner of doing the necessary work on this boiler and fire-box, we find no prejudice in the ruling.

Recurring to the question of the competency of the interrogatories propounded to the witness: It must be borne in mind that these questions were asked before there was any conflict in the evidence and in an endeavor by the plaintiffs to make a *prima facie* case. Section 7887, Revised Codes, provides that a witness may give his opinion of a question of science, art or trade, when he is skilled therein. This means that an expert witness may give his opinion upon, or about, a question of science, art or trade. (*Cummings* v. *Reins Copper Co.*, 40 Mont. 599, 107 Pac. 904.) In the case just cited this court said: "The general rule, however, is that [a witness] may state facts only whenever the question to be determined is the result of the common experience of all men of ordinary education, or is to be inferred from particular facts; the inference is to be drawn by the jury and not by the witness." In that case and in the case of *Metz* v. *City of Butte*, 27 Mont. 506, 71 Pac. 761, also cited by appellant, the court did not hesitate to say, in effect, that the jurors were as well qualified to draw the proper inference, from their own experience, as was the witness.

The court of appeals, in *Dougherty* v. *Milliken,* 163 N. Y. 527, 79 Am. St. Rep. 608, 57 N. E. 757, thus stated the general rule in a manner which appeals to us as being correct: "It may be broadly stated as a general proposition that there are two classes of cases in which expert testimony is admissible. To the one class belong those cases in which the conclusions to be drawn by the jury depend upon the existence of facts which are not common knowledge and which are peculiarly within the knowledge of men whose experience or study enables them to speak with authority upon the subject. If, in such cases, the jury with all the facts before them can form a conclusion thereon, it is their sole province to do so. In the other class we find those cases in which the conclusions to be drawn from the facts stated, as well as knowledge of the facts themselves, depend upon professional or scientific knowledge or skill not within the range of ordinary training or intelligence. In such cases not only the facts, but the conclusions to which they lead, may be testified to by qualified experts. The distinction between these two kinds of testimony is apparent. In the one instance the facts are to be stated by the experts and the conclusion is to be drawn by the jury; in the other the expert states the facts and gives his conclusion in the form of an opinion which may be accepted or rejected by the jury. The next step in the logical development of this inquiry is to ascertain to which of these two classes the case at bar belongs. If the knowledge of the experts consists in descriptive facts which can be intelligently communicated to others not familiar with the subject, the case belongs to the first class. If the subject is one as to which expert skill or knowledge can be communicated to others not versed in the particular science or art only in the form of reasons, arguments, or opinions, then it belongs to the second class." In our judgment this case belongs to the second class. We are not able to say that an inexperienced juror could tell, after the expert witness had narrated the fact conditions as they appeared to him, whether the engine was still in a reasonably safe condition for use. He might know all of the fact conditions and not be able to draw a

conclusion from them.  In such case an expert could, and we have no doubt the experts in this case did, materially enlighten the jurors upon the ultimate question to be determined.  While, technically, these witnesses did not answer that question, to-wit, Was the defendant negligent?  still there would be no objection had they by inference done so.  The jury could either accept or reject their opinions.  (*Chandler* v. *Tompson* (C. C.), 30 Fed. 38; *Hutchinson Cooperage Co.* v. *Snider,* 107 Fed. 633, 46 C. C. A. 517; *Transportation Co.* v. *Hope,* 95 U. S. 297, 24 L. Ed. 477.)

The trial court is the first judge of the competency of a witness to testify as an expert.  (*Yergy* v. *Helena L. & Ry. Co.,* 39 Mont. 213, 102 Pac. 310.)   And when the court is unable to say, as a matter of law, that the jurors are as competent to pass upon the safety of an appliance as are men who have special knowledge on the subject, gained from experience, the evidence of such men may be admitted.  (*Coleman* v. *Perry,* 28 Mont. 1, 72 Pac. 42.)

This brings us to a phase of the case which affords a proper opportunity for a few observations concerning the duty of this court in the determination of appeals in civil actions.  Section 6593, Revised Codes, provides that no judgment shall be reversed by reason of any error in the proceedings which does not affect the substantial rights of the parties.  We doubt if the bench and bar of the state have given this statute the consideration, scope, force and effect to which it is entitled.  It is plain and requires no interpretation.  This court is commanded to give judgment on appeal without regard to errors which do not affect the substantial rights of the parties.  The statute was designed to prevent reversals of causes wherein substantial justice has already been done.  It was intended to put a speedy end to litigation, when that object can be attained without injustice.  The power to determine the ultimate question whether the substantial rights of an appellant have been violated must reside somewhere.  The Constitution framers and the legislative assembly, reaching out, apparently, toward that

most desirable end— a fair, impartial and speedy investigation
and determination of matters in issue between litigants—have
vested the power in this court.   Not without safeguards, how-
ever.   Before a case reaches here, the appellant's cause, in
actions at law, has been adversely determined by a trial judge
and a jury, unless he has waived the latter, and in all suits in
equity by a chancellor; all sworn to decide according to the law
and the evidence.   The courts all agree that, presumptively, the
initial decision is correct.   That decision is simply affirmed by
this court.   The statute last cited will be invoked and applied
in both letter and spirit, whenever in future, it is possible to
do so.

Let us assume that the exceptions we have been considering
were well taken, and apply the statute to this case.   Plain-
tiffs' witnesses, as experts, gave opinion as to the condition of
the engine boiler before the accident, and the nature and cause
of the explosion.   Defendant's witnesses, also experts, arrived
at conclusions altogether different.   Every opportunity was
given and taken for a thorough investigation.   No competent
testimony was excluded.   The fact that the defendant, after the
court's ruling, was obliged to rebut the testimony of plaintiffs'
experts, is not in our judgment sufficient to take the case out
of the operation of the statute.   The jury was free to adopt the
opinions of either set of witnesses.   After inspection of the
wrecked boiler, they adopted those of the plaintiffs' experts.
We think, on this branch of the case, both parties had a fair
and impartial trial, regardless of the rulings we have just con-
sidered.

2. At the close of plaintiffs' case the defendant moved to
strike from the record ''all of the testimony relating to the
alleged defects in the boiler except that relating to the patch
and the cracks, and especially the testimony relating to the de-
fective stay bolts, for the reason that it in no manner relates
to the explosion as a producing cause.''   The court, by consent,
granted the motion as to the stay bolts and overruled it in other
respects.   Appellant cannot complain of this ruling.   The mo-

tion was not sufficiently specific to include evidence as to any part of the boiler, save that relating to the stay bolts.

3. Defendant offered to prove by a witness that while there exists a popular impression that metal having holes in it, when heated, will expand toward the holes and make them smaller, such impression is erroneous. The offer was refused. The popular impression was immaterial. It was defendant's privilege to give the facts in evidence, and, as we read the record, it finally succeeded in doing so.

4. Defendant offered this instruction: "(9) Among the alleged weaknesses claimed by plaintiff is the condition of the hammer heads. It is insisted that they were worn off and weakened so as to have lost or impaired their holding power. Here the burden of proof is upon the plaintiff to show the condition of the hammer heads to have existed as she claims, and that this created such a weakness as that it did, and in the natural course of events would have been likely to have caused the explosion, and that it was a weakness without which the explosion could not have happened, and that this condition had existed so long that the defendant in the exercise of reasonable care should have discovered and repaired it." The court struck out. "and that it was a weakness without which the explosion could not have happened," and inserted in lieu thereof, "and that it was a weakness that contributed to the cause of the explosion." There was no error in this action of the court. The complaint, as aforesaid, charges that the boiler and parts thereof were worn out and defective. There was no attempt to have this allegation made more specific. Schelega testified: "The defects of the boiler was the general cause of the explosion." Cummings said: "That fire-box, from my examination, was unfit, and had been for some time previous." Four of plaintiffs' witnesses testified that the engine was not in a reasonably safe condition for use and operation, on account of the several defects in the boiler which they described. They were of opinion, as we understand, that each of the alleged defects contributed, more or less, to this weakened and unsafe condition. Defendant asked

the court to instruct the jury that they could not consider any defect unless they were satisfied that, in its absence, the explosion could not have happened. This was not the proper rule to apply under the circumstances. It ignores the cumulative effect of the different defects. The court properly told the jury that they must disregard any defect which did not contribute to the explosion. Any defect which contributed to the general result was a proximate cause, although, had it alone existed, the boiler would have retained sufficient strength to withstand the steam pressure and would not have exploded.

5. Defendant requested the court to charge the jury that, "if a strike existed which made it more difficult than it otherwise would have been to accomplish inspection, only such degree of vigilance would be required during the continuance of the strike as would represent reasonable care under the circumstances then existing." The court refused the instruction. This was a correct ruling. There is some desultory testimony in the record to the effect that there was a strike among the boilermakers, but not anything appears to have been predicated upon the fact, either in the pleadings or upon the trial, prior to the tender of this instruction. The testimony is too unsubstantial to be entitled to any consideration. And, indeed, it does not appear that there was any failure to inspect or repair on account of the strike.

6. It is contended that the evidence is not sufficient to support the verdict. The testimony is in sharp conflict, and that for the plaintiffs was amply sufficient, if the jury believed it, to support a finding in their favor. Counsel assert that the verdict is in conflict with the undisputed physical facts disclosed, and they make a very elaborate and ingenious argument in support of their position, but we cannot agree that the question so ably presented to this court was not for the jury to decide.

The judgment and order are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.