KILLEEN, RESPONDENT, *v.* BARNES-KING DEVELOPMENT CO., APPELLANT.

(No. 3,165.)

(Submitted September 16, 1912. Decided October 10, 1912.)

[127 Pac. 89.]

*Master and Servant—Mines—Personal Injuries—Assumption of Risk—Contributory Negligence—Custom—Safe Place to Work —Conflicting Instructions—Pleading and Proof.*

Master and Servant—Personal Injuries—Assumption of Risk—Jury Question.
1. Unless an appliance (a wooden block placed upon a rail to stop a car used for dumping purposes), a defect in which was alleged to have been the cause of the injury of plaintiff (a miner) and with which he had been working for about ten days, was so manifestly insufficient to perform the service required of it as to suggest to a person in possession of his faculties and of ordinary intelligence the danger of working with it, he may not be held chargeable with assuming the risk incident to its use as a matter of law; whether he did or not in this case, *held,* under the evidence, a question for the jury.

Same—Contributory Negligence—Safe and Dangerous Method of Work— Jury Question.
2. To make the rule applicable that where an employee has two or more ways of doing a thing, one of which is dangerous and the other safe, and he chooses the unsafe way and is injured, he is guilty of contributory negligence, it must appear that he knew, or ought to have known, that the method he chose was unsafe; where the evidence leaves this question in doubt, it is one for the jury's determination.

Same—Custom—Contributory Negligence—Jury Questions.
3. Whether plaintiff was guilty of contributory negligence in following a custom of miners, engaged in the same character of work, in

doing the work during the course of which he was injured, which was known to and acquiesced in by defendant, was properly a jury question, unless such method was so obviously dangerous that no prudent man would .have adopted it.

Same—Safe Place—Nondelegable Duty of Master.
  4.  The duty of furnishing his servant with a safe place to work being nondelegable, the master is liable for the negligent putting in place of an appliance, no matter who (outside of the injured servant) performed the actual labor of placing it.

Same—Conflicting Instructions—When Harmless Error.
  5.  A conflict between two instructions is insufficient to work a reversal of the judgment, where one correctly states the law, and tho other, though erroneous, is in appellant's favor.

Same—Pleading and Proof—"Necessary"—Instructions.
  6.  Plaintiff in his complaint charged that it was "necessary" for him to do a certain thing in performing his work. Defendant employer denied this allegation and requested an instruction that it was incumbent upon plaintiff to prove his statement. The court refused to do so, but charged the jury that it was not essential that the evidence show that plaintiff was absolutely required to do as he did, *etc.* *Held,* not error, the record not indicating that plaintiff intended the word to be given the meaning of "indispensable."

*Appeal from District Court, Fergus County; E. K. Cheadle, Judge.*

ACTION by M. Killeen against the Barnes-King Development Company. From a judgment for plaintiff and an order denying a new trial, defendant appeals. Affirmed.

*Messrs. Gunn, Rasch & Hall, Mr. Wm. M. Blackford,* and *Mr. John E. Corette,* for Appellant, submitted a brief; *Mr. E. M. Hall* argued the cause orally.

That plaintiff assumed the risk incident to his employment, see *Fotheringill* v. *Washoe Copper Co.,* 43 Mont. 485, 117 Pac. 86; *Butler* v. *Frazee,* 211 U. S. 459, 53 L. Ed. 281, 29 Sup. Ct. Rep. 136; *Mayor* v. *Queen City Lumber Co.,* 64 Wash. 567, 117 Pac. 392.

The fact that the plaintiff testified at the trial: "I thought it would be safe," "I didn't know it was unsafe," cannot, in the light of his other testimony, and the open and obvious conditions and dangers, avail him. See *Bresette* v. *E. B. & A. L. Stone Co.* (Cal.), 121 Pac. 312, where it was said: "In spite of such a general allegation of the absence of knowledge on the part of the employee as we have in this case, a complaint is

demurrable, if the specific allegations thereof show that he must have known of the defects and the danger therefrom." (See, also, *Molt* v. *Northern Pac. Ry. Co.,* 44 Mont. 471, 120· Pac. 809; *Relyea* v. *Tomahawk Pulp & Paper Co.,* 110 Wis. 307, 85 N. W. 960; *Duffy* v. *New York etc. Ry. Co.,* 192 Mass. 28, 77 N. E. 1031; *Gleason* v. *New York etc. Ry. Co.,* 159 Mass. 68, 34 N. E. 79; *Errico* v. *Washburn-Williams Co.,* 170 Fed. 852; *National Biscuit Co.* v. *Nolan,* 138 Fed. 6, 70 C. C. A. 436.)

Plaintiff was guilty of contributory negligence under the rule that "where a servant has two or more ways of doing a thing and the one is dangerous and the other safe, and he chooses the unsafe and is injured, he is guilty of contributory negligence, provided he knew, or ought to have known, that the one method was safe and the other unsafe. And it is immaterial that the safe way is not as convenient as the other.' (Bailey on Personal Injuries, 2d ed., sec. 469.) In the following cases failure to take the safer way was held contributory negligence as a matter of law: *Newport News Publishing Co.* v. *Beaumeister,* 102 Va. 677, 47 S. E. 821; *Bibby* v. *Wausau Lumber Co.,* 88 Wis. 367, 50 N. W. 337; *Sladky* v. *Marinette Lumber Co.,* 107 Wis. 250, 83 N. W. 514; *Zvanovich* v. *Gagnon & Co.* (Mont.), 122 Pac. 272; *Kuhn* v. *H. C. Frick Coke Co.,* 216 Pa. 385, 65 Atl. 796; *Illinois Central Ry. Co.* v. *Swift,* 213 Ill. 307, 72 N. E. 737; *Leppala* v. *Cleveland Iron Min. Co.,* 122 Mich. 633, 81 N. W. 553; *Meehan* v. *Great Northern Ry. Co*, 43 Mont. 72, 114 Pac. 781; *Harrington* v. *B. A. & P. Ry. Co.,* 37 Mont. 169, 16 L. R. A., n. s., 395, 95 Pac. 8.

In paragraph 4 of the complaint plaintiff alleges that in fastening the bucket to the cable "it became and was necessary, in the regular course of business, to step upon said truck so as to fasten the said cable to said bucket." This allegation is specifically denied in the last part of paragraph of defendant's answer. If plaintiff expected to prove that stepping on the truck "was one of the methods customarily pursued and was a reasonably safe one," he should have pleaded it. The fact that the evidence does not support the allegations of a complaint which are put in issue does not authorize the court to ignore

such issue or to relieve plaintiff from the burden of proving his material allegations as alleged. (31 Cyc. 676; *Jorias* v. *Illinois Steel Co.*, 101 Ill. App. 416; *Dexter* v. *Ohlander*, 89 Ala. 262, 7 South. 115; *Wilkinson* v. *Pensacola etc. Ry. Co.*, 35 Fla. 82, 17 South. 71.)

*Messrs. Ayers & Marshall,* and *Messrs. Walsh & Nolan,* for Respondent, submitted a brief; *Mr. C. B. Nolan* argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This action was brought to recover damages for injuries received by plaintiff while working as a miner for the defendant at Kendall, Montana. He recovered, and defendant appealed from the judgment and from an order denying it a new trial.

The plaintiff and two other men, constituting a shift, were engaged in sinking a prospect shaft which at the time of the accident was about 35 feet deep. The debris from the bottom of the shaft was raised by means of a windlass, rope and bucket. The collar of the shaft was boarded over, except that a space about four feet square was left through which the bucket was raised and lowered. Rails were laid on two sides of this opening and extended away from the shaft to a dump. On these rails was run a small flat car to carry the bucket of debris to the dump. The top or platform of the car was about sixteen inches from the ground, and was sufficiently large to completely cover the opening at the collar of the shaft when the car was run under the windlass to receive or deliver the bucket. For the purpose of stopping the car at the proper place and holding it there while the bucket was attached or detached, a block or bumper was placed over one rail on the side of the opening opposite the dump. One man filled the bucket at the bottom of the shaft, and the other two operated the windlass and raised the load to the surface, and to such a height that the car could be run under the bucket, when the bucket was lowered onto the car, the windlass rope detached from the bucket, and the

load run out to the dump, emptied, and the car with the empty bucket returned to a point under the windlass and directly over the opening of the shaft, when the rope was attached to the bucket, the car withdrawn, and the bucket lowered for another load. The windlass men "took turn about" running the car. On June 17, 1907, about 2:30 o'clock in the morning, while the plaintiff was engaged in the performance of his duty as one of the windlass men, and when it was "his turn" to do so, he took the car with a bucket of debris from the collar of the shaft to the dump, emptied the bucket, and returned the car with the empty bucket to the shaft. While attempting to attach the windlass rope to the empty bucket preparatory to lowering it, the car moved forward from under him, plaintiff came in contact with the drum of the windlass, was thrown back into the shaft, and sustained the injuries of which he complains. He charges negligence on the part of the defendant in failing to provide a block or bumper of sufficient size to prevent the car moving forward over it, and in failing to keep the block or bumper which was supplied in a reasonably safe condition.

The evidence on the part of the plaintiff tends to show that the block or bumper was a piece of wood three inches thick, nailed to the platform which surrounded the opening at the collar of the shaft, and extended about one inch above and over one rail of the track; that these several appliances had been in constant use by three shifts each day for a week or ten days; that they were in place at the time the plaintiff went to work, and that the flange on the car wheel coming in contact with the bumper had worn a groove into the piece of wood. Plaintiff's theory is that because of this groove and of the thinness of the bumper a slight force was sufficient to cause the car to move forward over the bumper, and the evidence of the plaintiff himself is that, when he returned the car with the empty bucket to the collar of the shaft, the car was brought to a full stop under the windlass, and, when he stepped on the car to attach the rope to the bucket, the car moved forward over the bumper, causing him to fall down the shaft. The defendant interposed the pleas of assumption of risk and contributory

negligence, and now urges upon us that the evidence offered by the plaintiff proves the allegations of these special pleas.

1. *Assumption of Risk.* The contention of appellant is that for more than a week the plaintiff was working about the collar of the shaft; that the block or bumper was in plain sight; that plaintiff in fact saw it frequently; that at least he is chargeable with knowledge of its worn condition; that he must have appreciated the danger from its continued use; that he failed to complain, and therefore must be held to have assumed the risk. The evidence discloses that plaintiff had seen the bumper a number of times, but he did not know how thick it was, how high it projected above the rail, or whether it was over one rail or over both rails. He testified that he had confidence in the defendant; that he did not have any idea the car would go over the bumper; that he had never noticed that the flange of the car wheel had cut a groove in the bumper at all; and that there was any danger from using the bumper had never entered his mind. So frequently has the question of assumption of risk arisen, that the principles of law controlling the doctrine have become well settled, and with respect to them there is little, if any, contrariety of opinion. The only difficulty arises in applying them to a given state of facts.

In *Fotheringill* v. *Washoe Copper Co.*, 43 Mont. 485, 117 Pac. 86, this court said: "As the rule is commonly stated, it is to the effect that the servant assumes all the usual and ordinary risks attendant upon his employment, not including risks arising from the negligence of the master, and that he assumes the latter as well, if he knows of the defects from which they arise and appreciates the dangers which flow from such defects." From the evidence before us we may say that the bumper was defective, in that it was not thick enough in the first instance, and that it was permitted to become out of repair, in the second; but whether plaintiff is chargeable with knowledge of these facts is altogether a different question. As said by this court in *McCabe* v. *Montana Central Ry. Co.*, 30 Mont. 323, 76 Pac. 701: "The faculty of close observation of objects is largely a gift. Some persons may walk once along a street and be able, with-

out any special effort, to describe every prominent object upon and every projection into the street, while others might go up and down the same street for a year who could not describe such objects and projections." A block extending one inch above the rail might be insufficient to stop and hold the car. If it extended six inches above the rail, there is no question, from this evidence, but that it would have been altogether adequate for any purpose for which it was intended; but it does not appear just how high above the rail the block must have extended to rightfully perform its functions, or, in other words, it does not appear just where the dividing line between danger and safety could be drawn. The employee is not required to carry about with him a gauge or foot-rule to determine whether the appliances furnished by his employer fully meet the requirements of efficiency. As said by the supreme court of the United States in *Choctaw etc. R. Co.* v. *McDade,* 191 U. S. 64, 48 L. Ed. 96, 24 Sup. Ct. Rep. 24: "The servant has the right to assume that the master has used due diligence to provide suitable appliances in the operation of his business, and he does not assume the risk of the employer's negligence in performing such duties. The employee is not obliged to pass judgment upon the employer's methods of transacting his business, but may assume that reasonable care will be used in furnishing the appliances necessary for its operation." Of course, if the conditions are constant and of long standing, and the danger is so obvious as to suggest itself to a person in possession of his faculties and of ordinary intelligence, he cannot escape the consequences by refusing to see the conditions or appreciate the danger. In other words, negligent ignorance is not any excuse.

But the record before us discloses that these appliances had been in use there only for a week or ten days, and, of course, the degree of impairment in the block depended upon the force and frequency with which it was struck, the weight of the car, the condition of the wheel flange, the character of the wood in the block to withstand the cutting force of the car wheel, and probably other conditions and circumstances. When placed in position, the block was undoubtedly considered adequate by

the person who placed it, and whether it was or was not suffi-
cient for the purpose intended was a question upon which dif-
ferent persons might disagree.   The plaintiff was not called
upon to conduct a series of experiments to determine the extent
of the damage occasioned by each contact of the car wheels with
the block, or the force necessary to move the car over the block.
He was employed to work, not to experiment, and, unless the
[1]   bumper was manifestly insufficient to perform the services
required of it, the plaintiff cannot be chargeable with assuming
.the risk as a matter of law.   The rules applicable here have
been stated so frequently that they need not be repeated.   (Mc-·
Cabe v. Montana Central Ry. Co., above; Hollingsworth v.
Davis-Daly Estate C. Co., 38 Mont. 143, 99 Pac. 142; Anderson
v. Northern Pac. Ry. Co., 34 Mont. 181, 85 Pac. 884; Osterholm
v. Boston & Mont. C. C. & S. Min. Co., 40 Mont. 508, 107 Pac.
499; Rase v. Minneapolis etc. R̊y. Co., 107 Minn. 260, 21 L. R.
A., n. s., 138, 120 N. W. 360; Dorsey v. Construction Co., 42
Wis. 583.)   The question of assumed risk was properly one for
the jury.   (Kinsel v. North Butte M. Co., 44 Mont. 445, 120
Pac. 797.)

2. *Contributory Negligence.*   The defendant charged the
plaintiff with negligence which directly contributed to his own
injury, in that, it is alleged, when plaintiff had emptied the
bucket at the dump and had placed it upon the car, he gave
the car a start back toward the shaft and then mounted the
car and rode on it; that the car came with great speed toward
the shaft and came in contact with the bumper with great force,
by reason whereof plaintiff was either thrown, or carelessly
stepped or jumped from the car, sustaining the injuries of which
he complains.   In argument counsel for appellant insisted: (a)
That it was unnecessary for plaintiff to get upon the car to
[2]   attach the rope to the bucket, that he could have accom-
plished the same end by standing upon the platform which sur-
rounded the shaft opening, and that in proceeding as he did
plaintiff voluntarily chose an unsafe way in preference to one
which was safe, and the familiar rule announced in Bailey on
Personal Injuries, section 469, is invoked, as follows: ''It is

well settled that where a servant has two or more ways of doing a thing, and the one is dangerous and the other safe, and he chooses the unsafe and is injured, he is guilty of contributory negligence, provided he knew, or ought to have known, that the one method was safe and the other unsafe." While to one not familiar with the work it would seem that the plaintiff might have attached the bucket just as easily and conveniently from the ground as from the car, and yet the testimony of experienced miners tends to show that it was not practicable to work from the ground, particularly if the bucket-bail happened to be on the side of the bucket away from the man who was seeking to make the fastening. In explanation of this evidence, it is to be observed that the bucket used by these men at the time the plaintiff was injured was half of a barrel. One witness in particular testified that he never saw the work done in any manner other than that employed by the plaintiff; that the method employed was reasonably safe, and as safe as any other, assuming that the bumper was sufficient to perform the services required of it. One essential element of the rule announced above is, that the plaintiff knew, or ought to have known, that the method he chose to follow was unsafe. At best it can be said only that the evidence leaves that question in doubt, and therefore it was properly submitted to the jury. (b) It is urged that the evidence shows that plaintiff rode the car back from the dump, and that it was the impact of the heavy car with plaintiff's added weight, which caused the plaintiff's fall. This is answered by plaintiff, who says that to the best of his recollection he did not ride the car back, but walked along and shoved it; that the car came to a full stop over the shaft opening, and that, when he stepped on the car to attach the rope to the bucket, the car moved forward over the bumper and from under him, and he fell. Particular stress is laid upon the fact that Larson, a witness for plaintiff, testified that it was quite a general custom among the men to ride the car back from the dump; that he had seen the plaintiff ride the car before the night of his injury; and that, when he first observed the plaintiff returning on the trip when he was hurt, plaintiff was then on the car.

From this and other similar statements of the witness we are asked to draw the conclusion that plaintiff did ride the car from the dump; but a consideration of the entire testimony given by the witness will scarcely justify such a conclusion. At best, it leaves the question in doubt. The witness testified: "He was on the car coming back from the dump when I observed him. * * * There is where I first observed him as the car came over the shaft. * * * He stopped his truck. It was brought to a standstill for a second, anyway. He proceeded to hook the rope on to the bucket, and, while doing so, the truck moved forward, letting him down the shaft." It would seem to be immaterial whether plaintiff rode or walked, if it be true that he brought the car to a standstill before he undertook to fasten the rope. While it appears extravagant to say that the force applied by a man stepping upon a car weighing 500 or 600 pounds is sufficient to move the car over an obstruction such as this bumper was, still, in the light of all the evidence, we do not feel justified in saying that plaintiff's version is so inherently improbable as to deny it all claim to belief. But assume, for the moment, that plaintiff did ride the car. Unless that [3] method was obviously dangerous, then plaintiff was entitled to have the jury determine the question of his contributory negligence, in the light of the evidence that he proceeded in all his actions according to the custom of miners engaged in the same character of work, and that this custom was known to his employer, who did not object. The rule is stated in 1 Labatt on Master and Servant, section 353, as follows: "A circumstance frequently adverted to as one which tends to negative the inference that the servant was guilty of contributory negligence is that the course of action which he was pursuing at the time the injury was received was the one customarily followed by himself or his coemployees under similar circumstances with the approval or tacit acquiescence of the master or his representative. How far this circumstance is actually a differentiating factor, serving to fix the line of demarcation between evidence which does and which does not warrant a court in saying as a matter of law that the action is not maintainable,

is a question to which the cases supply no definite answer. The only doctrine which it seems possible to formulate upon the subject is the somewhat vague one, that, unless what the servant did was necessarily and inevitably so dangerous that it is impossible to concede that any prudent man would have acted in such a manner, evidence showing that he complied with a custom, known to and expressly or impliedly sanctioned by his employer, will generally turn the scale in his favor, and secure for him the privilege of having the quality of his conduct determined by the jury, although he would otherwise have been declared incapable of recovering." In *Kinsel* v. *North Butte Min. Co.,* above, we considered this question at length, and our conclusion is in harmony with the rule announced by the trial court in the instructions which were given. (*Richardson* v. *Klamath S. S. Co.* (Or.), 126 Pac. 24.)

3. Objection was made to the introduction of certain expert testimony on behalf of plaintiff. The question now raised was set at rest by this court in *Copenhaver* v. *Northern Pacific Ry. Co.,* 42 Mont. 453, 113 Pac. 467.

4. The placing of the bumper was so plainly a part of the [4] master's duty in providing a place to work that it is wholly immaterial who actually performed the mechanical labor in placing it, so long as plaintiff himself took no part in it. Whoever did it acted as the *alter ego* of the employer, and, if it was done negligently, the master must assume responsibility.

5. There is a conflict between instructions 3 and 15 given by [5] the court; but this fact does not require a reversal of the judgment. The rule is settled in this jurisdiction. In *State* v. *Jones,* 32 Mont. 442, 80 Pac. 1095, we said: "It is not every case of conflicting instructions which warrants a reversal. If one instruction states the law, and another one in conflict with it is given, which is erroneous, but in the defendant's favor, he cannot complain of the erroneous instruction, or of the conflict between the two. The reason for this is apparent, and is illustrated in this instance; for, if the jury followed the law as announced in No. 14, the defendant could not complain, for it states the law correctly. If, on the other hand, the jury ig-

nored No. 14 and followed No. 13, defendant cannot complain, for in that event the jury could only be misled in his favor." And this rule was approved in *Donovan-McCormick Co.* v. *Sparr,* 34 Mont. 237, 85 Pac. 1029. There is not anything whatever in the evidence to warrant submitting to the jury the question: Whose duty was it to provide the block or bumper and put it in place? And for this reason instruction No. 15 ought not to have been given. It is erroneous, but it was given at defendant's request and is in his favor. No. 3 correctly states the rule, and defendant cannot complain.

6. Plaintiff alleged in his complaint that it was necessary for him to step upon the car in order to attach the windlass rope to the bucket. This allegation was denied in the answer, and defendant requested the court to charge that it was incumbent upon plaintiff to prove the allegation as made. The court declined to do so, but gave instruction 3a, which reads as follows: "It is not essential that it shall appear from the evidence that the plaintiff was absolutely required to 'mount the car in order to fasten the cable or rope. If the method of doing the work he followed was customarily pursued by the men engaged in it, or was one of the methods customarily pursued, and was a reasonably safe method, the plaintiff is not chargeable with contributory negligence in following it on the occasion when he was injured."

The rule is elementary that the plaintiff must prove every **[6]** material allegation of his complaint which is put in issue; and, if the action of the trial court operated to relieve him of that burden, then the court was in error, and whether the court did so relieve him depends upon the construction to be given the language of the pleading and the first clause of instruction 3a above. The remaining portion of the instruction deals with the question of contributory negligence, and not with the burden of proof. In a restricted sense the term "necessary" means indispensable; but there is not anything in this record to indicate that the plaintiff intended the word to be given that meaning in his pleading. After all, "use is the law of language," and, as employed in the law particu-

larly, *necessary* "frequently imports no more than convenient, essential or useful to some end in view." (Anderson's Law Dictionary.) "Necessary" is defined as follows: "In law. Requisite for reasonable convenience and facility or completeness in accomplishing the purpose intended." (Century Dictionary.)

In section 8, Article I, of the Constitution of the United States, the Congress is authorized "to make all laws which shall be necessary and proper for carrying into execution the foregoing powers, and all other powers vested by this Constitution in the government of the United States, or in any department or officer thereof"; but it was never intended to limit the congressional power to passing only such laws as are indispensable to those ends. When the restricted meaning was intended by the framers of the Constitution, they used the qualifying word "absolutely," as in section 10 of the same Article, "No state shall, without the consent of Congress, lay any imposts or duties on imports or exports, except what may be absolutely necessary for executing its inspection laws." (*McCulloch* v. *Maryland*, 4 Wheat. 316, 4 L. Ed. 579.) In a suit upon a bottomry bond for money advanced to supply a ship "with necessary repairs," Justice Story in circuit said: "But a thorough examination of the common text-writers, ancient as well as modern, will, as I think, satisfactorily show that they have all understood the language in a very mitigated sense, and that necessary repairs mean such as are reasonably fit and proper for the ship under the circumstances, and not merely such as are absolutely indispensable for the safety of the ship or the accomplishment of the voyage." In a statute which requires a railroad to install farm crossings where necessary, the word "necessary" was held to mean reasonably convenient. (*Chalcraft* v. *Louisville, E. & St. L. R. Co.*, 113 Ill. 86.) But a multiplication of citations is unnecessary. A reference to 5 Words & Phrases, 4705, discloses the liberality with which the word "necessary" has been treated by the courts. The language of the complaint is the language of eminent counsel familiar with the adjudications, and it is but fair to assume that they employed the word "necessary" in the light of these adjudications, and intended that it should receive a liberal defi-

nition. This position is fortified by the course of conduct pursued at the trial, including the request for instruction 3a above. The trial court was called upon to charge a jury of laymen, and, had defendant's offered instruction been given as requested, it is practically certain that the jurymen would have understood the word "necessary" to mean "indispensable." Doubtless, if the trial court had been requested to do so, it would have told the jury that plaintiff had sustained the allegation of his complaint now under discussion, if he showed by a preponderance of the evidence that in mounting the car to attach the rope to the bucket.he pursued a method which was convenient, practical, and reasonably safe, but the court was not requested to give such a charge. Instruction 3a, so far as it relates to the question of burden of proof, is not erroneous, even though it might have been elaborated, and the jury thereby further enlightened. Defendant's requested instruction No. 2, in the very nature of things, must have misled the jury if it had been given without amplification.

The judgment and order are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY concurs.

MR. JUSTICE SMITH, being absent, did not hear the argument, and takes no part in the foregoing decision.