COLLINS, Respondent, vs. CHICAGO & NORTHWESTERN RAIL-
WAY COMPANY, Appellant.

*May 15—June 4, 1912.*

*Railroads: Negligence: Injury to employee of contractor: Rebuild-
ing operations: Right of construction crew to use trestle: Con-
tributory negligence: Evidence: Instructions to jury.*

1. In an action for injuries to a carpenter employed by a construc-
tion company in rebuilding a railway bridge or trestle, who
was struck and injured by a construction train which, on a
foggy morning, was backed in upon the trestle with unusual
speed and without having given any signal or warning of its
approach, the questions whether the railway company was neg-
ligent in the running of such train and whether plaintiff, after
having looked and listened for the train, which was expected,
was negligent in attempting to pass from one end of the trestle
to the other on a board walk which had been laid between the
rails for the use of the concrete workers, instead of going be-
neath the structure, are *held*, upon the evidence, to have been
questions for the jury.

2. Although the walk over the trestle was laid for use by the con-
crete workers, yet all the members of the construction crew
having been invited to use it in all matters in which it would
facilitate their work, if the railway company should have an-
ticipated injury to any person by reason of the way in which
it ran the train in question its responsibility is not affected by
the fact that it was a carpenter, not a concrete worker, who was
injured.

3. Evidence relative to the usual mode of rebuilding bridges on a
line of railway in operation, and to the mode of conducting the
work at the time and place in question, was admissible in such
case to aid in understanding questions of want of ordinary care.

4. A requested instruction to the jury which is confused and unin-
telligible may properly be refused.

5. Under the circumstances stated, it was a question for each work-
man to determine in the exercise of ordinary care and prudence
when to use the walk and to what extent and for what purposes
connected with the construction work it should be used; and a
requested instruction to the jury to the effect that plaintiff had
no excuse for being on the trestle unless his presence there was
absolutely necessary in the proper prosecution of the work in
which he was engaged, was properly refused.

Collins v. Chicago & N. W. R. Co. 150 Wis. 305.

APPEAL from a judgment of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge.    *Affirmed.*

In this case there was a special verdict as follows:

"(1) Was the whistle of the engine on the train which struck the plaintiff blown after the train was within such reasonable distance of the bridge where the plaintiff was injured as ought to have warned those at work on or about the bridge of the approach of the train?    *A.* No.

"(2) Was the train which struck the plaintiff running at the rate of speed at which trains customarily approached and crossed the bridges on which the plaintiff had been at work?    *A.* No.

"(3) Was the conductor on the top of the caboose at the time the train approached and crossed the bridge at which plaintiff was injured?    *A.* Yes.

"(4) Did the defendant use ordinary care in the operation of its train on approaching the bridge at the time plaintiff was injured?    *A.* No.

"(5) If your answer to any or all of the preceding questions be 'No,' was such course of conduct on the part of the agents and employees of the defendant the proximate cause of plaintiff's injury?    *A.* Yes.

"(6) Was there any want of ordinary care on the part of the plaintiff that contributed to produce his injuries?    *A.* No.

"(7) What sum will compensate the plaintiff for the injuries which he sustained?    *A.* $3,000 (three thousand dollars)."

Error is assigned and argued in rulings admitting and rejecting evidence, in refusing and giving instructions to the jury, and in refusing to grant a nonsuit and to direct a verdict for defendant.

*Daniel H. Grady,* for the appellant.

*D. W. McNamara,* for the respondent.

TIMLIN, J.    The plaintiff was an employee of the Bates & Rogers Construction Company, which under contract with defendant was engaged in reconstructing bridges upon defend-

ant's line of railroad.    On September 27, 1909, this construction company was thus engaged upon a bridge on the main line of the railroad where it crossed a low, wet place or slough.    The structure, in the testimony sometimes called a bridge and sometimes a trestle, was about eighty feet long and eight to ten feet above the surface of the low land and water at the bottom.    The operation of trains on the road continued and a construction train in aid of repairs backed in over the trestle every morning.    The trestle, with the apparent consent of defendant, was used by a gang of Bates & Rogers men, who placed their mixing boards or boxes for mixing the concrete at the east end of the trestle to one side and on a level with the rails, their tool box at or near the same place, and laid a board or plank walk upon the ties between the rails and extending from one end of the trestle to the other.    They also built what witnesses called a cofferdam and forms for the concrete.    These structures extended down between the ties from the track into the excavations at the bottom.    They moved material to the mixing boxes, mixed it making concrete, and put this in wheelbarrows and wheeled it along the board or plank walk to the forms or receptacles and dumped it into the latter.    This bridge crew consisted of concrete mixers and wheelbarrow men and carpenters and perhaps some others.    The carpenters laid the board walk, built the cofferdams and forms where required, and stripped them or took them apart when necessary.    At the bottom of the trestle there was water in places two feet deep and the place was strewn with *débris* from the rebuilding operations.    The ordinary trains approaching on the road signaled and either stopped or slacked up before reaching the bridge work, the workmen got out of the way, and the train then passed slowly over.    The construction train, consisting of a locomotive, tender, and several freight cars, the last one open at the end and equipped with what is known in railroad work as a "tail-hose," backed in every morning, somewhat irregularly as regards

time, for the purpose of delivering material to the bridge crew. It signaled its approach by the usual locomotive whistle and also by the "tail-hose," which is connected with the compressed air chamber of the air brake and makes a sound something like an automobile horn. It is said, but how accurately we do not know, that this can also be used to set the air brakes on the last car. In any event the practice was for the construction train to back in slowly after giving signals. The workmen were expected, of course, to be on the track but to keep out of the way of trains. This is in general the way in which all bridge work on operating roads is done. The concrete men could not do their work without going on the track and using this board walk. Aside from their work in laying the walk and that upon the upper end of the forms the carpenters could work below the trestle. The carpenters going from the west end of the board walk could reach the tool chest by traveling on the surface of the slough below the trestle and ascending at the east end to where the tool chest was, or they could reach the tool chest over the board walk. At the time in question the morning was foggy, and the plaintiff, who was a carpenter and engaged in doing carpenter work in the trestle below its surface and at the west end of the board walk, completed that work, and his duty required him to put his tools in the tool box and get others appropriate for further and different work. He came up to the track, looked and listened for an approaching train, for he knew it was about time for the construction train. Seeing and hearing nothing he proceeded along the board walk eastwardly toward the tool box, carrying a heavy hammer and a bar and wearing heavy rubber boots. When he had gone about forty feet or half way to the tool chest, his fellow workmen saw the construction train appearing out of the fog about 150 feet west of the trestle and called to plaintiff. He heard them, took one look back, saw the approaching train, threw away his tools and started on a run, but before he reached the mixing

boxes, where he would find his first chance to leave the track, unless he jumped from the trestle, the train ran him down and injured him just as he reached and was about to step over into the mixing boxes. The train backed in with unusual speed without any man at the tail-hose and without signal or warning. Such is the case as disclosed by the evidence, assuming that the verdict of the jury requires us to accept the testimony and inferences therefrom most favorable to support the verdict.

On the question of nonsuit the appellant's contention seems to be that the plaintiff was a trespasser on the bridge or trestle because he might have reached the tool box by the other route and should have done so when he had occasion to go to the tool box at or about the time of the approach of the construction train. We consider this position untenable. The invitation to use this board walk was plainly extended to all the employees of the construction company in all matters in which its use would facilitate their work. There was no distinction observed between carpenters and other members of the crew so far as regards the use of this board walk. It was a matter of judgment, a question of the exercise of ordinary care on the part of the plaintiff, whether he should take the route to the tool chest over the board walk or the route under the trestle. Neither route was without its dangers and difficulties. Similar considerations apply to the contention that the plaintiff should not have used the walk on the trestle at such time when the construction train was expected to arrive. He looked and listened for the train and, hearing and seeing nothing to indicate its near approach, he undertook to cover the short distance between him and the tool box. In doing so he apparently had a right to rely upon the usual signals being given and the train backing in at the usual speed. These conditions, we think, presented questions of fact bearing on the contributory negligence of plaintiff. The appellant erroneously assumes that they give rise to legal rules which abso-

lutely fix the contributory negligence of plaintiff. We think
the question of plaintiff's negligence in using the board walk
at the time, in the manner, and for the purpose he did, was for
the jury and is settled by the sixth question of the special
verdict. On the question of defendant's negligence the case
was clearly for the jury. Some argument is made that be-
cause those in charge of the construction crew had no ground
to anticipate that the carpenter members of the construction
crew would be using this walk there was a failure of proof of
defendant's negligence, because as to them the carpenters
were as trespassers. We cannot approve of this reasoning.
If the defendant should have anticipated injury to any person
on account of backing in at an excessive speed on a foggy
morning without the usual signals, that was enough to stamp
the act as negligent, and it cannot escape the consequences
merely because a carpenter instead of a concrete worker was
the one injured.

There was no error in admitting testimony relative to the
usual mode of rebuilding the bridges on a line of railroad in
operation nor in relation to the mode of conducting the work
at the time and place in question. This is not a question of
custom nor is it governed by the law of custom. Popularly,
custom may be used as a synonym for mode or practice, but
in law a custom means something else. Great liberality is
allowed in the introduction of evidence relating to the mode
or practice of carrying on the work in question or somewhat
similar work. Such evidence was very proper to aid the jury
in understanding questions of want of ordinary care.

We do not think the court excluded evidence offered by the
defendant tending to show that the mode or practice was to
remain entirely off the bridge at or about the time when a
train was due. We find no such evidence rejected and no
such ruling. The question relating to the impeachment of
the witness Benning to which our attention is called, cannot
have any such scope. There was no error in excluding ques-

tions on cross-examination of plaintiff asking him whether he had subpœnaed a certain named person as a witness and whether he knew that this person would be a witness. The defendant requested the court to instruct the jury that, "in determining whether plaintiff had a right to be on such trestle, you are instructed that it is not enough to show the existence of such right, that he believed such use was intended. It must further appear that he brought home to defendant by acts and conduct affording reasonable grounds for such belief, and he must show, either that the trestle which was to be used for the purpose for which he was using it, under the arrangement with the contractor for whom he was working, or that the circumstances were such that such use might be reasonably inferred from such arrangement." This was very properly rejected as confused and unintelligible. It is said to have the support of *Furey v. N. Y. C. & H. R. R. Co.* 67 N. J. Law, 270, 51 Atl. 505. Even if this were so, precedent cannot establish clearness in language which itself unmistakably indicates confusion of thought. Neither was it proper to instruct the jury that the plaintiff had no excuse for being on the trestle unless his presence there was absolutely necessary in the proper prosecution of the work in which he was engaged. This is too absolute and excludes considerations of ordinary care. If there was an invitation, express or implied, extended to all of the bridge construction crew to use this trestle in their work, but to keep out of the way of passing trains, this left it a question for each workman to determine, in the exercise of ordinary care and prudence, when to use this walk, to what extent and for what purposes connected with the construction work it should be used. Persisting in its use unnecessarily or in the presence of an approaching train, when the approach was known to the workman or in the exercise of ordinary care ought to have been known to him, would no doubt be such contributory negligence as would preclude recovery. But under the facts here it would be impos-

sible to say as matter of law that workmen must suspend all operations and wait for the uncertain arrival of the construction train and not continue at their work relying on the usual signals and upon its approach in the usual manner. Cases cited by appellant relating to persons going on a bridge or trestle on a railroad track who are not invited or permitted to do so by the railroad company and when their presence there is unnecessary are not in point.

Other questions are argued and have been considered but they are covered by what has been said. We are compelled to disagree wholly with appellant's theory of this case, consequently its exceptions to the admission of evidence, to the refusal of instructions, and to the instructions given are unavailing.

*By the Court.*—Judgment affirmed.

# CASES DETERMINED

# August Term, 1912.