## MULLERY, Respondent, v. GREAT NORTHERN RY. CO. ET AL., Appellants.

(No. 3,477.)

(Submitted February 10, 1915. Decided March 16, 1915.)

[148 Pac. 323.]

*Personal Injuries—Master and Servant—Railroads—Assumption of Risk—Contributory Negligence—Choice of Ways—Earning Capacity—Evidence—Instructions—Excessive Verdict— Trial—Peremptory Challenges.*

Trial—Peremptory Challenges—"Each Party"—Definition.
1.   The provision of section 6740, Revised Codes, that "each party" to a civil action shall be entitled to four peremptory challenges, *held* to mean each side or party litigant, and not each person of whom the respective sides or parties litigant are made up.

Same—Antagonistic Codefendants—Peremptory Challenges.
2.   Though each of two or more codefendants who are hostile to each other is entitled to the number of peremptory challenges of jurors allowed by section 6740, Revised Codes, to parties litigant, where neither their joint answer, which asserted defenses common to all, nor the evidence disclosed any conflict of interest, they constituted but one party and as such were entitled to but four peremptory challenges under the rule declared in paragraph 1, *supra.*

Personal Injuries—Railroads—Tracks upon Premises of Another—Care Required.
3.   The rule that railway companies must, in the operation of their engines and cars, exercise ordinary care to avoid injury to persons whose rightful presence upon or near their tracks is to be anticipated, has especial application to cases where the tracks are upon premises and within structures belonging to the employer of the injured.

Same—Positive and Negative Testimony—Weight—Jury Question.
4.   The conflict presented by the positive testimony of defendant company's train crew that the bell of its locomotive was ringing at the time of the accident, and the negative statements of plaintiff and his witnesses that they heard no bell, was one properly submitted to the jury for solution.

Same—Codefendants—Verdict as to One—Effect.
5.   Where the complaint in a personal injury action charged the defendant railway company with primary negligence as well as with responsibility for the failure of its switching crew—two members of which only were made defendants—to exercise care in making a coupling and to ring the bell of the locomotive, and the jury found against all, though the evidence did not connect the individual defendants with the cause of the injury, a reversal of the judgment as to them did not necessitate the same result as to the company.

Same—Master and Servant—Assumption of Risk—Appreciation of Danger.
6.   Where recovery of damages for personal injuries is sought to be defeated because plaintiff, with full knowledge and appreciation of the danger of his situation did not exercise any care for his safety, the danger appreciated must be the one from which the injury arose.

[As to remote and proximate cause, see note in 36 Am. St. Rep. 807.]

Same—Contributory Negligence.

7.   An employee who, while in the discharge of his duties, was injured by a sudden and unexpected movement of cars which had been standing on a track upon his employer's premises, without an engine attached, and of any contemplated movement of which he was entitled to be warned but was not, and who before stepping into the place where he was hurt stopped, looked and listened, may not be said to have been guilty of negligence as matter of law.

Same—Evidence—Admissions—Jury Question.

8.   Whether immediately after the accident, plaintiff made statements that his injury was due to his own carelessness—of which he disclaimed any recollection—whether, when made, he was fully conscious of their purport, and whether their purport constituted an admission of legal negligence, were questions for determination by the jury.

Same—Contributory Negligence—Choice of Ways.

9.   In applying the rule that contributory negligence will be imputed, as a matter of law, to an employee who, in the performance of a duty, knowingly and voluntarily chooses a way which is dangerous in preference to one which is safe, or one which is more dangerous than the one he selects, regard must be had to the circumstances and the right of the chooser to assume that others whose negligence may jeopardize his safety will proceed in the customary manner and with reasonable care.

Same—Choice of Ways.

10.   In balancing ways for the purpose of making a choice, the rule requires only such a choice as under all the known or obvious circumstances a reasonably prudent person might make, and not an unerring one viewed in the light of after-events.

[As to assumption of risk and contributory negligence in law of master and servant, see notes in 97 Am. St. Rep. 884; 98 Am. St. Rep. 289.]

Same—Earning Capacity—Evidence—Admissibility.

11.   Where plaintiff, by trade a carpenter, was injured while working in a smelter, he was not, in showing his earning capacity, confined to his then occupation as a standard, but was properly allowed to introduce evidence that the going wage of carpenters at the place of the accident was $1.75 per day more than he was receiving at the time of its occurrence.

Same—Earning Capacity—Proper Instruction.

12.   An instruction authorizing the jury to consider plaintiff's disability, if any, to pursue his usual vocation, in addition to the impairment of his earning capacity, in arriving at their verdict, *held* not open to objection.

Same—Verdict not Excessive.

13.   Plaintiff was earning $3.25 per day when hurt; his injuries consisted of a scalp wound, the loss of two fingers of his right hand, and the crushing of a third, the fracture of a bone of the thumb of the left hand, inside of which a growth is developing; he was unable to work for four months; has lost his earning capacity as a carpenter and an all-around man, suffered pain and sustained a permanent mutilation. *Held*, that a verdict for $5,000 was not excessive.

[As to excessiveness of verdict in action for personal injuries, see note in Ann. Cas. 1913A, 1361.]

*Appeal from District Court, Cascade County; J. B. Leslie, Judge.*

ACTION by Vincent W. Mullery against the Great Northern Railway Company and others. Judgment for plaintiff. Defendants appeal from the judgment and from an order denying their motion for new trial. Affirmed as to appellant company, and reversed as to appellants William Welch and Thomas Lynch.

*Messrs. Veazey & Veazey,* for Appellant Railway Company, and *Mr. Stephen J. Cowley,* for Appellants Welch and Lynch, submitted a brief; *Mr. I. Parker Veazey, Jr.,* argued the cause orally.

*Error in refusing to recognize challenges:* We contend, that, under the statutes of Montana, first, there is no obligation on the part of the defendants in a civil case to join in a challenge that each defendant is entitled to challenge jurors separately; and, secondly, that, in the exercise of such separate challenge, each defendant in entitled to four peremptory challenges. In so far, of course, as the defendants join in challenging the same juror, it is true, then, that each has been allowed a challenge in each instance, but there is no authority in the court to compel them to agree upon the challenges and to join in the same, or to refuse to recognize separate challenges interposed by each defendant to a different juror. Where different proof is necessary in order to establish liability against each defendant, separate challenges are necessary. Thus, where two connecting railroads are sued for damage in transit, each is entitled to separate challenges. So here, where the plaintiff sought to hold the defendant railway company for acts of its engineer and fireman, it was entitled to a separate challenge, and likewise were the individual switchmen entitled to the same right. The switchmen would be liable over to the railway company; it was to their interest to establish negligence on the part of others, so as to exonerate themselves. But the authorities do not review statutes as express as ours. (See *Texas & P. Ry. Co.* v. *Stell* (Tex. Civ.), 61 S. W. 980; *Rogers* v. *Armstrong Co.* (Tex. Civ.), 30 S. W. 848; *Hogsett* v. *Northern Texas Traction Co.,* 55 Tex. Civ. 72, 118 S. W. 807; *Waggoner* v. *Dodson,*

96 Tex. 6, 68 S. W. 813, 69 S. W. 993; *First Nat. Bank* v. *San Antonio etc. Railway Co.*, 97 Tex. 201, 77 S. W. 410; *Hannay* v. *Harmon* (Tex. Civ.), 137 S. W. 406; *McLaughlin* v. *Carter*, 13 Tex. Civ. 694, 37 S. W. 666; *Flowers* v. *Flowers*, 74 Ark. 212, 85 S. W. 242.)

The theory that the plaintiff was a carpenter by trade was wholly fanciful, and evidence of the wages paid to carpenters was too remote in point of time and attendant circumstances in this case to have any fair or proper bearing. (*Hubbard* v. *Mason City*, 60 Iowa, 400, 14 N. W. 772; *Hobel* v. *Mahoning etc. Ry. & L. Co.*, 229 Pa. 507, 79 Atl. 119; *Chicago etc. Electric Ry. Co.* v. *Spence*, 213 Ill. 220, 104 Am. St. Rep. 213, 72 N. E. 796; *West Chicago Ry. Co.* v. *Maday*, 188 Ill. 308, 58 N. E. 933.) We appreciate that the test is not the actual work in which the plaintiff may temporarily be engaged, for, if such were the rule, a person temporarily idle would have no earning capacity. It is nevertheless well recognized that evidence as to plaintiff's earning capacity must be limited to the actual conditions of the case, and to occupations with which the plaintiff may be said to have, at the time, some real, substantial, direct connection, either in fact or in reasonable expectation, and that evidence as to former occupations of the plaintiff for a brief period of two years in his entire life, remote in point of time and circumstances, should not be received by the jury.

The verdict is plainly excessive and should be at all events reduced. This is a matter which rests so largely in the discretion of the court, as to which no hard-and-fast rule can be laid down, that a citation of authorities is not particularly helpful. Each case must be considered on its own facts, but here we emphasize that a laborer, already advanced in age beyond half a century, is awarded substantially $2,500 a finger, although, at slightly different labor, he, at the end of four months, has been, and now is earning exactly the same as before. (See *Louisville etc. R. Co.* v. *Foley*, 94 Ky. 220, 21 S. W. 866; *Kansas Pac. Ry. Co.* v. *Peavey*, 34 Kan. 472, 8 Pac. 780.) In the following cases verdicts are held excessive, but simply re-

duced. Like the above, they are also cases of young men between fifteen and twenty-five years of age. We have been able to find no case where the damages have been so grossly exaggerated as they have in the present case. (*Barclay* v. *Puget Sound Lumber Co.*, 48 Wash. 241, 16 L. R. A. (n. s.) 140, 93 Pac. 430; *Stiller* v. *Bohn Mfg. Co.*, 80 Minn. 1, 82 N. W. 981; *Ball* v. *Peterman Mfg. Co.*, 47 Wash. 653, 92 Pac. 425; *Gahagan* v. *Aermotor Co.*, 67 Minn. 252, 69 N. W. 914; *Louisville & N. R. Co.* v. *Law* (Ky. App.), 21 S. W. 648; *Gagnon* v. *Klauder-Weldon Dyeing Mach. Co.*, 174 Fed. 477; *Rittel* v. *E. E. Souther Iron Co.*, 127 Mo. App. 463, 105 S. W. 662; *Barge* v. *Bousfield*, 65 Minn. 355, 68 N. W. 45.)

*Choice of ways:* It is unnecessary to review the authorities on the matter of the bearing of a choice of ways on the defense of contributory negligence, for the reason that the general rule has been twice affirmed by this court, and the district court itself, in its instructions numbered 19 and 20, instructed the jury in the language of that rule. We content ourselves with a reference to *Johnson* v. *Maiette*, 34 Mont. 477, 87 Pac. 447; *Zvanovich* v. *Gagnon & Co.*, 45 Mont. 180, 122 Pac. 272.

*Mr. E. L. Bishop*, for Respondent, submitted a brief and argued the cause orally.

*Rule as to choice of ways, and its application:* While this court has approved the general rule as to choice of ways laid down by the text-writers, it has not, nor, so far as I am able to discover, has any other court, held that it is negligence as a matter of law to adopt a way or method which it not so essentially dangerous that a reasonably prudent person would not have chosen it under all the circumstances, even though a safer way was available. To require plaintiff not only to exercise reasonable care in the selection, but to go further and from two or more ways approximately equally safe to select absolutely the safest, would be to require of him a far higher degree of care for his own safety than that required of a defendant. Apparently all the decisions are to the contrary. Indeed, the case

of *Killeen* v. *Barnes-King Development Co.*, 46 Mont. 212, 127 Pac. 89, seems to have settled this question adversely to appellants. (See, also, Labatt on Master & Servant, 3435; *Brinkmeier* v. *Missouri Pac. Ry. Co.*, 69 Kan. 738, 77 Pac. 586; *Great Northern R. Co.* v. *Thompson*, 199 Fed. 395, 47 L. R. A. (n. s.) 506, 118 C. C. A. 79; *Brown* v. *Hunt & Shuetz Co.* (Iowa), 145 N. W. 311; *Collins* v. *Chicago etc. Ry. Co.*, 150 Wis. 305, 136 N. W. 628; *George* v. *St. Louis etc. Ry. Co.*, 225 Mo. 364, 125 S. W. 196.)

*Alleged error in refusing to recognize challenges:* Statutes providing, like ours, that each party is entitled to a certain number of challenges are quite common, and it is uniformly held that where the defendants make a common defense and no issue is raised between them to be passed upon by the jury, the word "party" should be construed as including all of the defendants. (*Downey* v. *Finucane*, 205 N. Y. 251, 98 N. E. 391; *Illinois etc. Ry. Co.* v. *Freeman*, 210 Ill. 270, 71 N. E. 444; *Cumberland Telephone etc. Co.* v. *Ware*, 115 Ky. 581, 74 S. W. 289; *Witliff* v. *Spreen*, 51 Tex. Civ. 544, 112 S. W. 98; *Citizens' Ry. etc. Co.* v. *Johns*, 52 Tex. Civ. 489, 116 S. W. 62; *Galveston etc. Ry. Co.* v. *Saunders* (Tex. Civ.), 141 S. W. 829.)

*Evidence of earning capacity:* The contention of respondent that where a person has once acquired special knowledge and skill in a particular trade, by reason of which he is enabled to command greater compensation than a common laborer, that his ability to exercise such trade is an asset of which he cannot be wrongfully deprived without compensation, irrespective of the length of time he has been engaged in other pursuits, and that the wages which he could have earned in that particular trade at and subsequent to the time of his injury is competent evidence to be considered by a jury in estimating his damage, especially under our statute allowing compensation for all the detriment proximately caused, seems too obvious and just to need argument or authority to support it. The rule established in *Osterholm* v. *Boston & M. etc. Min. Co.*, 40 Mont. 508, 107 Pac. 499, is even broader than that contended for by respondent.

There is nothing in any of the cases cited by appellants that conflicts with respondent's contention, with the possible exception of the ancient case of *Hubbard* v. *Mason City*, 60 Iowa, 400, 14 N. W. 772, decided in 1883. That case, however, is clearly distinguishable in principle, since there the testimony adduced had reference not to wages paid to skilled mechanics but to common farm laborers, plaintiff not being engaged in that pursuit at the time of his injury. On the other hand, the case of *West Chicago St. R. Co.* v. *Maday*, 188 Ill. 308, 58 N. E. 933, cited by appellants, expressly holds that evidence as to plaintiff's skill and experience as a worker in wood was proper. In *Chicago etc. E. Ry. Co.* v. *Spence*, 213 Ill. 220, 104 Am. St. Rep. 213, 72 N. E. 796, cited by appellants, the evidence admitted was as to the salary received more than five years before. In *Hobel* v. *Mahoning etc. Ry. Co.*, 229 Pa. 507, 79 Atl. 119, the testimony admitted had reference to a salary received seven years before while employed in an entirely different capacity, and the court said that the testimony was too remote and the circumstances were very different. It is a matter of common knowledge that wages, salaries and other circumstances and conditions affecting the amount paid, even in the same line of employment, change from year to year, and the reasons for the rulings in the three last mentioned cases is obvious, but none of them is applicable to the case at bar, where the testimony related to wages at and subsequent to the time of the accident.

MR. JUSTICE SANNER delivered the opinion of the court.

The respondent, plaintiff below, brought this action to recover damages for injuries alleged to have been caused by the negligence of the Great Northern Railway Company and its switching crew, two of whom were joined with the company as defendants. The answer denies negligence on the part of defendants or any of them, and pleads contributory negligence as well as assumption of risk. Trial was to a jury who determined the issues against the defendants, and from the judgment entered on the verdict, as well as from an order denying their

motion for new trial, they have appealed.   Several questions are presented which will be considered *seriatim.*

1. Upon the selection of the jury and after twelve men had been passed for cause, the appellants each demanded and sought to exercise four peremptory challenges.   This was not permitted, the court ruling that they were only entitled to challenge collectively.   As the result, there were left upon the jury, after all the peremptory challenges thus allowed had been exhausted, three persons who had been severally challenged by the appellants but upon whose rejection they did not agree.   Their contention is that under section 6740, Revised Codes, each of them was entitled to exercise four peremptory challenges, and this is [1]   claimed to be based upon the language of the statute as well as upon its history.   The section reads as follows:  ''Each party may challenge the jury or jurors, as follows: 1. The panel or array. 2. For cause. 3. Peremptory.   There can be only one challenge on a side to the array or panel, which may be made by one or more of the parties.   A challenge to the array or panel may be made and the whole array or panel set aside by the court when the jury was not selected, drawn, summoned or notified, as prescribed by law.   Challenges to individual jurors are for cause or peremptory.   Each party is entitled to four peremptory challenges.   If no peremptory challenges are taken until the panel is full, they must be taken by the parties alternately, commencing with the plaintiff.''   It certainly cannot be said that this provision is unequivocal.   If ''party'' means each individual upon either side of the cause, then a contradiction resides in the expressions ''each party may challenge the array,'' but ''there can be only one challenge on a side to the array.''   It is manifest, of course, that the use of the words ''party'' and ''side'' may have been studied and purposeful; but it is not manifest that the particular purpose was to allow four peremptory challenges to each individual defendant in every case.   A case in which there is one plaintiff and two or more defendants, each exercising the same number of peremptory challenges, presents difficulties in the way of obeying

the mandate to challenge "alternately commencing with the plaintiff," and these difficulties are not to be needlessly multiplied. It is said that if the legislature intended to require defendants to join in their challenges, it could have said so in apt terms, such as appear in the provisions relating to criminal trials (sec. 9244, Rev. Codes). This is true. It is also true that if the statute had meant to authorize four peremptory challenges by each individual plaintiff or defendant, such intent could have found unmistakable expression. So, too, the fact that section 6740 first appeared in this state as section 1059, Code of Civil Procedure of 1895, supplanting a section of the Compiled Statutes (sec. 257, Code Civ. Proc.), which did expressly require parties on the same side to join in their challenges, is apparently of much significance. But this significance is more apparent than real. Words and phrases which have acquired a particular and appropriate meaning in law are to be construed according to such meaning (Rev. Codes, sec. 15). When section 6740 appeared for the first time in our Code, it was, and from an early date had been, universally held that the words "each party" used in the connection there presented, mean each side or each party litigant, and not each person of whom the respective sides or parties litigant are made up. (*Schmidt* v. *Chicago & N. W. Ry. Co.*, 83 Ill. 405; *Sodousky* v. *McGee*, 4 J. J. Marsh. (Ky.) 267; *Hargrave* v. *Vaughn*, 82 Tex. 347, 18 S. W. 695; *Bibb* v. *Reid*, 3 Ala. 88; *Snodgrass* v. *Hunt*, 15 Ind. 274; *Stone* v. *Segur et al.*, 11 Allen (Mass.), 568; *Bryan* v. *Harrison*, 76 N. C. 360; *Blackburn* v. *Hays*, 44 Tenn. 227; *Wolf* v. *Perryman*, 82 Tex. 112, 17 S. W. 772.) So far as civil cases were concerned, special expression was required, not to state this meaning but its opposite; and in the absence of unequivocal language to the contrary, the persons composing each side or party litigant were required to join in the exercise of peremptory challenges. In criminal cases, and for very obvious reasons, the rule was exactly the reverse. Defendants jointly tried for a public offense were each presumed entitled to the number of peremptory challenges fixed by law, and an explicit

provision was necessary before they could be required to join; and this is the explanation of section 9244.  Nor is the construction thus given to section 6740 without excellent reason.  It is not to be supposed that a statute was intended to create an absurdity, and yet we have only to imagine the existence of several individual plaintiffs or defendants, each exercising four peremptory challenges, to see the possible result; instead of a speedy trial of the issues by an impartial jury, a long-drawn and expensive preliminary proceeding, resulting in the elimination of every talesman whose intelligence or freedom from bias might fairly commend him for the particular duty.  As said by the supreme court of Illinois: ''Had there been twenty tenants seeking damages, each holding by a separate lease, appellant's argument would lead to those tenants being permitted to exercise sixty challenges while the petitioner could use but three, and that, manifestly, would not accord with the intent of the statute.''  (*Freiberg* v. *South Side Elevated R. Co.*, 221 Ill. 508, 77 N. E. 920.)  We need not doubt, however, that since nominal defendants who are in fact hostile to each other are ''parties litigant,'' they are entitled to challenge as such within the meaning of section 6740.  (*Hargrave* v. *Vaughn, supra; Rogers* v. *Armstrong Co.* (Tex. Civ.), 30 S. W. 848; *McLaughlin* v. *Carter,* 13 Tex. Civ. 694, 37 S. W. 666; *Hogsett* v. *Northern Texas Traction Co.,* 55 Tex. Civ. 72, 118 S. W. 807; *Levyn* v. *Koppin* (Mich.), 149 N. W. 993.)  Whether such hostility must [2] appear on the face of the pleadings, or whether it may be shown in some other way at the time the jury is selected, we need not determine because no such hostility was ever made to appear in any way in the case at bar.  The answer was joint, was signed by attorneys representing all the appellants and asserted defenses common to all of them.  As between them there was not, by pleading, representation or evidence, any conflict of interest disclosed or any issue of any sort.  They constituted but one party defendant, and the ruling by which they were limited to four peremptory challenges was correct.

2. At the close of respondent's evidence, appellants "jointly and severally" moved for a nonsuit, which was denied; later and at the close of all the evidence, they similarly moved for a directed verdict which met the same fate. Claiming error in these rulings, the appellants now insist that neither the respondent's case, in the first instance, nor the whole case, was sufficient in point of fact to warrant a recovery against them, or any of them. This involves a discussion of the circumstances of the accident, which were as follows:

The respondent was an employee of the Anaconda Copper Mining Company, at the B. & M. Smelter in Great Falls. One of the units composing that smelter was a structure called the "smoke-shed," a building several hundred feet long east and west, by twenty-seven feet wide north and south. This smoke-shed was open at both ends and was traversed lengthwise by two tracks, running on 16x16 timbers. Beneath these tracks, separated by similar timbers, were thirty-five bins which ran from side to side of the structure, each taking up about twelve feet of its length, and being about eighteen feet deep. Midway of the smoke-shed, or nearly so, was bin 17, which was flanked on the east by bin 18, and on the west by bin 16; west of bin 16 was bin 15, and east of bin 18 was bin 19; bin 19 was covered by a plank floor, the others being open so as to receive ore or rock from the cars; at the east end of bin 15 and next to bin 16, was a doorway to which a flight of stairs led; these stairs and doorway were installed for the purpose of enabling employees of the smelter, who might have occasion, to enter the smoke-shed at that point. The south rail of the south track as it crosses bins 15, 16, 17 and 18, was about fifty inches from the south wall of the building; between the two tracks and along the south wall were plank walks—also designed for the use of employees on occasion; the walk between the tracks was twenty-six inches wide; that along the south wall varies in width, being thirty-two inches wide over bins 15 and 16, and eighteen inches wide over bins 17 and 18. In the south wall, opposite bin 19, was an elevator-way, and from this a door led

to the floor covering that bin and giving access, when free from
cars, to the plank walks above described.   At a point 220 feet
from the west end of the smoke-shed, a track called the "Black-
Jack" left the north track and ran eastward just north of the
smoke-shed.   On November 28, 1912, the respondent was in
charge of operations by which rock was forwarded from bin
17 through a conveyer into a crusher, there crushed and thence
loaded into cars for transfer elsewhere.   In the afternoon of
that day, having partially loaded a car, he deemed it necessary
to ascertain how much rock remained in the bin.   For this
purpose he proceeded to and up the stairway leading to the
doorway at bin 15; arrived there he found a string of cars
standing on the south track and extending east and west of the
doorway; he paused a moment, listened and looked to the west
to learn if there were any signs of movement in the cars or of
an approaching engine; he saw no engine and heard nothing,
though his sight and hearing were good; concluding that the
easiest and safest way to accomplish his mission was to walk
along the south wall to bin 17, he did so.   About the middle
of bin 17 he stopped, faced west, stooped over so as to see into
the bin, and called to the man who was working there.   As he
did this, a crash of cars came; he was struck on the head and
knocked into the bin, sustaining the injuries which will be here-
after described.

Upon the issue of appellant's negligence, the evidence on the
part of respondent tended to show that the accident was caused
by the movement of a switch-engine and cars from the west and
into the cars standing on the south track, for the purpose of
making a coupling; that for years it had been customary for
employees of the smelter to be upon and about the tracks in
the smoke-shed and to be about that portion thereof adjacent
to bin 17 and adjacent to the door at bin 15, in the performance
of their duties; that this was known to the railway company
and its employees, and it was their rule and custom, before
cars were moved or disturbed, to give warning both by ringing
the bell and by the mouth of its employees; that it was also

their rule and custom in making a coupling to come to a full stop before completing the coupling, and thus to give warning that standing cars are about to be disturbed; that no warning whatever, either by ringing the engine bell or by the mouth of its employees, or by the usual method of procedure, was given of the operation which resulted in the injuries complained of; that had warning been given in any of these ways, the respondent could have put himself into a position of entire security and thus avoided the accident. So far as the railway company is concerned, we think this was sufficient. It is elementary that a [3] railway company must, in the operation of its engines and cars, exercise ordinary care to avoid injury to persons whose rightful presence upon or near its tracks is to be anticipated. (33 Cyc. 766.) This rule has special application to the present case, because the tracks were upon premises and within a structure belonging to respondent's employer.

On the part of appellants there was ample testimony to justify the conclusion that the coupling was managed in the ordinary way and that ample warning of the operation was given by [4] the almost constant ringing of the bell. As to the latter, it is vigorously insisted that the positive testimony of the members of the crew that the bell was ringing ought to be held to outweigh the negative evidence of respondent and his witness Wisler that they heard no bell; but the testimony of the respondent was that he listened for the bell and that from bins 15, 16 or 17 he has often heard, and could have heard, the bell of an engine in the smoke-shed or on the tracks west of the smoke-shed; the most that can be said upon this subject is that a substantial conflict was presented which it was the province of the jury to resolve. (*Riley* v. *Northern Pac. Ry. Co.*, 36 Mont. 545, 93 Pac. 948; *Walters* v. *Chicago etc. Ry. Co.*, 47 Mont. 501, 46 L. R. A. (n. s.) 702, 133 Pac. 357.)

But though the company was negligent and though such negligence came to exist through the fault of some person or persons [5] concerned in the operation that caused the accident, it does not follow that a case was made as against the appellants Welch

and Lynch. Besides them, three others took part, *viz.*, the switch foreman, the engineer and the fireman. According to respondent's contention, the accident would not have occurred if the operation had been performed with due care, the want of such care consisting in the manner in which the coupling was made and in the failure to ring the bell or give any other warning; but there is nothing whatever to show that it was the duty or within the power of Welch or Lynch to control the manner of making the coupling, or to ring the bell or to give any warning. Counsel for the company observing this, insist that the verdict against Welch and Lynch "constitutes a special finding as against the railway company, and hence a reversal of that finding necessitates a reversal as to the railway company." The argument is that, as the jury "doubtless exonerated the other three members of the switching crew," the verdict against the company must have been based solely upon the negligence imputed to Welch and Lynch. This might be plausible had the respondent grounded his right to recover from the company solely upon the supposed negligence of Welch and Lynch, or had the verdict or finding as against any of the others been permissible. Such, however, was not the case; besides responsibility for the supposed fault of Welch and Lynch, the complaint charges the company with primary negligence, and also with responsibility for the failure of the entire switching crew; none of the other members of the crew were parties to the action, and no special findings of any kind were requested. It is therefore wholly gratuitous to say that the jury exonerated anybody; it might rather be inferred that the jury believed all the switching crew to have been negligent, and therefore returned their verdict against the company and the switchmen who were before the court. Under neither pleadings nor evidence was the negligence of the company dependent upon the particular members of the crew who were at fault; all of them could have been, though none of them need have been, joined as codefendants. Had all been joined, an erroneous exoneration of any of them would not have availed to discharge the company; an opposite mis-

take as to others would be equally ineffective. (*De Sandro* v. *Missoula Light & Water Co.*, 48 Mont. 226, 136 Pac. 711; *Melzner* v. *Raven Copper Co.*, 47 Mont. 351, 132 Pac. 552; *Verlinda* v. *Stone & Webster Eng. Co.*, 44 Mont. 223, 119 Pac. 573.)

The claim of contributory negligence is based upon a three-fold proposition: that the respondent, with a full knowledge and appreciation of the danger, without exercising any care for his own safety, and of his own deliberate choice, put himself into the peril from which he suffered. It is said that when he went to the door of bin 15, saw the standing cars and stopped, looked and listened, he demonstrated his appreciation of the danger. This is a singular reasoning, in view of the fact that he neither saw nor heard any indications of an approaching engine or any [6] movement in the cars. Appreciated danger has application under the doctrine of assumption of risk, and to defeat a recovery on this ground, the danger appreciated must be the one from which the injury arose. The evidence does not support—it negatives—the appreciation of any such danger. When the respondent saw the cars standing on the track, when by looking and listening he satisfied himself that no engine was near, and when he recalled the usual custom not to disturb standing cars without warning, he did assume whatever risk there might be in the cars moving of their own impulse or being moved in the usual way; but it was not apparent to him, nor was he bound to know, that without any warning and with unusual violence the cars he saw would be bumped by an engine and other cars. (*Moyse* v. *Northern Pac. Ry. Co.*, 41 Mont. 272, 108 Pac. 1062; *Westlake* v. *Keating Gold Min. Co.*, 48 Mont. 120, 136 Pac. 38.)

Nor, postponing the question of a choice of ways, is it apparent [7] that the respondent was lacking in care for his own safety. He was not upon an open railway, but upon his employer's premises, at a place entirely safe—so far as the particular danger in question is concerned—so long as switching was not going on. The cars were standing still, with no engine attached; they were harmless then and would continue harmless until they

were moved. As he entered the door of bin 15, he stopped, looked and listened; neither seeing nor hearing any sign of an engine or of movement among the cars, he proceeded to a point at bin 17 not to exceed twenty or twenty-five feet from the door; at bin 17 he faced west and hearing no warning, stooped to look into the bin and was struck. The whole thing could not have taken more than a minute or two; and this fact, with his precautions at the door and his right to expect a warning, are sufficient to prevent the conclusion that he was guilty of negligence as matter of law. (*Luebke* v. *Chicago, M. & St. P. Ry. Co.*, 59 Wis. 127, 48 Am. Rep. 483, 17 N. W. 870; *Maguire* v. *Fitchburg R. R. Co.*, 146 Mass. 379, 15 N. E. 904; *Gatta* v. *Philadelphia B. & W. Ry. Co.*, 2 Boyce (Del.), 356, 80 Atl. 617; *Bain* v. *Northern Pac. Ry. Co.*, 120 Wis. 412, 98 N. W. 241.)

[8] Stress is laid upon certain statements which appellants' witnesses say the respondent made just after the accident, to the effect that it was due to his own carelessness. Of these he disclaims any recollection, pleading his distressed condition at the time. Such statements are, of course, potentially serious; but their value is not absolute. Whether they were made at all; whether, when made, the speaker was fully conscious of their purport; whether their purport is fairly to be taken as an admission of legal negligence or only an expression of the speaker's view after the event that he might have done or avoided something which ordinary prudence did not require, are all matters of which the jury must be the judge.

It is contended, however, that respondent was clearly guilty [9] of contributory negligence in his deliberate choice of a more dangerous way to ascertain the contents of bin 17, and that the verdict of the jury is contrary to the law as expressed in the court's instructions 19 and 20. These instructions state the rule recognized in *Johnson* v. *Maiette*, 34 Mont. 477, 87 Pac. 447, and in *Killeen* v. *Barnes-King Dev. Co.*, 46 Mont. 212, 127 Pac. 89, that contributory negligence will be imputed as a matter of law to one who, having a duty to perform and a choice of ways to perform it, knowingly and voluntarily chooses the

way which is dangerous, to the way which is safe, or the way which is more dangerous to that which is less so. We shall not pause to consider whether, to ascertain the contents of bin 17, it was necessary for the respondent to go to that bin and see for himself, because his testimony that it was necessary is clear, is supported by substantial reasons, and is conformable to human experience; nor, save as bearing upon his choice of a point of observation, is the route taken by him of any importance, since he was not injured en route. The question of his choice of ways is, therefore, presented by the place and manner of observation selected by him. Two places were possible: the one he did choose, and another from the plank walk between the tracks. If the former was obviously dangerous under the circumstances, and the latter less so, then his choice was fatal unless justified by an emergency. We are not convinced that the point of observation selected by the respondent was obviously or necessarily dangerous in any respect now available to the appellants. It is true that in order to see into the bin at this point, he was required to stoop forward so as to be partially beneath the cars, and it is asserted, though not established, that in doing this he rested his hand upon the rail. Attention, however, has been called to the fact that the cars were standing, and, as such, harmless; that he exercised reasonable care to learn of the approach of an engine or of any sign or movement among the cars; that he was entitled to believe the cars would remain stationary, unless a warning should be given, in which event he could at once relieve himself of hazard from their movement. In the application of the rule upon choice of ways, and particularly in the imputation of knowledge that a given way is dangerous, regard is to be had to the circumstances; and these include the right of the chooser to assume that others whose unusual and negligent conduct alone can jeopardize him, will proceed in the customary manner and with reasonable care. (3 Labatt, Master & Servant, sec. 1271, pp. 3536–3548, and notes.) Assuming, however, that the way chosen by the respondent was dangerous, and that he knew or

ought to have known it to be so, we are not justified in the categorical holding that the alternative was any the less so. There is nothing to show that to see into bin 17 from the walk between the tracks, it would not have been necessary for him to act in about the same manner as he did on the south walk. The only advantages here were that the walk is more open and is the one commonly used for signaling by members of the switching crews. But these advantages were *nil,* in the absence of switching, and the respondent had no reason to expect that any switching operations were imminent. Moreover, ample and sufficient reasons are given, in our judgment, for the choice that was made. He had left his crusher running; an expeditious return to it was necessary; to reach the plank walk between the tracks a long detour around the cars to the west or to the east was necessary; either detour possessed dangers peculiar to itself; the elevator which gave access to the floor over bin 19 was not in commission, and cars were standing upon that [10] floor. In balancing ways for the purpose of making a choice between them, the rule does not require a choice unerring in the light of after-events, but only such a choice as under all the known or obvious circumstances a reasonably prudent person might make. (*Killeen* v. *Barnes-King Dev. Co., supra; Collins* v. *Chicago & N. W. Ry. Co.,* 150 Wis. 305, 136 N. W. 628; *Great Northern Ry. Co.* v. *Thompson,* 199 Fed. 395, 47 L. R. A. (n. s.) 506, 118 C. C. A. 79.) Whether under all the circumstances such a choice was made by the respondent, was properly submitted to the jury, and their verdict was in no sense contrary to the instructions upon this subject.

3. The respondent had testified that he is a carpenter and was totally incapacitated from following that trade by his in- [11] juries; and the court, over objection, allowed testimony as to the going wage at Great Falls for carpenters, which was $1.75 per day more than the respondent was receiving at the smelter. Fault is found with this, the contention being that, so far as earning capacity is concerned, the respondent was limited to his then occupation as a standard. This is not cor-

rect as an absolute proposition, though there are cases in which the prior occupation has been held too remote, on account of the nature of such occupation, the time since which it was followed, or the circumstances of its abandonment. A precedent for the ruling assailed may be found in *Osterholm* v. *Boston & Mont. C. C. & S. Min. Co.*, 40 Mont. 508, 521, 107 Pac. 499, wherein it was said: "While plaintiff was on the stand, he testified: 'I was working here for $3.50, $3.75, $4 and $4.50. I have followed contracting.' He was asked: 'What did you make contracting?' Over objection he answered: 'I was always making six and always over and sometimes under.' We think the testimony was competent as bearing upon his earning capacity."

Complaint is also made of the giving of instruction No. 22, in that it authorized the jury not only to consider the impairment [12] of respondent's earning capacity, but also his "disability by reason of the injury to pursue his usual vocation, if you find he is so disabled." It is suggested that this is wrong in the abstract, inapplicable to the case and prejudicial in view of the ruling just referred to. The evidence, however, tended to show that respondent is unable, because of his injuries, to do the work which at the time of the injuries he had been doing, or to pursue the established course of his life as a sound individual able to turn his hand to many things and thus to depend upon constant employment. That the loss of earning capacity is one element of damage, and disability to pursue one's usual vocation is another, were settled in *Montague* v. *Hanson*, 38 Mont. 376, 386, 99 Pac. 1063.

After the respondent had been cross-examined touching his reasons for going to bin 17 and attempting to look into the same, he was allowed to explain on redirect examination, why he did not regard the inexperienced man who was stationed there, as capable of giving the information of which he was in quest. This is criticised as calling for the conclusion of the witness as to the possibilities of the English language; but we do not see reversible error in it, nor in the only other ruling complained of, *viz.*, the refusal of the offer to explain the absence of Lynch.

4. It is contended that the award is so excessive as to evince [13] passion and prejudice. At the time of his injuries respondent was in charge of the crusher, with two assistants, and was earning $3.25 per day. He was sober, alert and industrious, but the record leaves us uncertain as to his age. His injuries consisted of a couple of scalp wounds, not very serious; the loss of the first two fingers of his right hand, and the crushing of the third, so that he cannot close his hand and has no grip in it; a fracture of the metacarpal bone of the thumb of the left hand, which required an operation; there is also a growth coming inside of his left hand since the accident; necessarily he suffered pain and he has sustained a permanent mutilation. For at least four months he was unable to do any work, and he cannot now and never will be able to do the work he was doing. He is doing other work at the same wage but has lost his capacity as an all-around man, so that he must take whatever he can do, and when nothing is offered that he can do, he must lay off. He is a carpenter by trade but his injuries have deprived him of that reserve against the day of need. How, in a summation of all these things, it is possible to say that an award of $5,000 is so grossly excessive as to shock the conscience and understanding, we are at a loss to perceive. Many decisions from other states are cited to show that similar or lesser injuries do not warrant such an award; some of these are well considered; others seem to ignore pain, mutilation and disability to pursue one's established course of life, as elements of damage. We are satisfied with our own standard and, under it, see no compelling reason for interference with the verdict. (*Lewis* v. *Northern Pac. Ry. Co.*, 36 Mont. 207, 92 Pac. 469; *White* v. *Chicago, M. & St. P. Ry. Co.*, 49 Mont. 419, 143 Pac. 561; *Knuckey* v. *Butte Electric Ry. Co.*, 45 Mont. 106, 122 Pac. 280; *Forquer* v. *North*, 42 Mont. 272, 112 Pac. 439.)

The judgment and order appealed from are reversed so far as the appellants Welch and Lynch are concerned, respondent to pay their costs on appeal; as to the appellant railway com-

pany the judgment and order appealed from are affirmed at its cost.

