## BORDER STATE LIFE INS. CO. v. MONK et al.

### No. 3487.

Court of Civil Appeals of Texas. El Paso.
March 18, 1937.

Rehearing Denied April 8, 1937.

Cofer & Cofer, of Austin, for appellant.

Aldrich & Crook, of Crockett, for appellees.

NEALON, Chief Justice.

Appellee C. L. Monk, hereinafter styled plaintiff, sued the appellant, Border State Life Insurance Company, hereinafter styled defendant, to recover the death indemnity provided for in a policy of insurance issued by defendant upon the life of Irene C. Lovell, who died April 12, 1935. Plaintiff alleged that he was the beneficiary named in said policy and that he had an insurable interest in decedent's life because he had extended credit to her and her husband to the extent of $525 for necessaries, consisting of money, groceries, and family supplies. The suit was brought in the name of plaintiff and for the use and benefit of John Lovell, surviving husband of decedent.

Defendant answered by general demurrer, special exceptions, general denial, and allegations that prior to insured's death the policy had lapsed and been forfeited, and that though notified of the forfeiture, the insured had never sought reinstatement. Defendant also pleaded that plaintiff C. L. Monk was ·in no way related to Irene C. Lovell, and had never had an insurable interest in her life.

Plaintiff Monk by supplemental petition rejoined that he regularly paid the assess-

ments upon said policy and charged the same to decedent's account; that this practice was regularly pursued and defendant accepted his checks; that it was the custom of defendant to accept such checks for premiums just before and soon after the assessments were due, and sometimes as long as two or three days after the assessments became due, and never did defendant refuse to accept such a tardy payment until it rejected a check dated March 4, 1935, to pay an assessment due March 5, 1935; that it did receive said check March 5, 1935, or in any event not later than March 6, 1935.

Premiums were payable monthly, and it appeared from the evidence that a number of the payments had been made and accepted later than their due date, apparently without protest from defendant until March 4, 1935. Appellant's notices carried a warning that if remittances were not received on their due dates, members would stand suspended. Plaintiff, who made all payments on the policy, testified that he relied on this manner of dealing with him in making the payments for Mrs. Lovell. Mrs. Lovell left surviving her five children and her husband.

Two special interrogatories were propounded to the jury, each of which it answered affirmatively. They were:

"Do you find from a preponderance of the evidence that it had become a custom of the Border State Life Insurance Company to receive premiums on the policy in question after the premiums were due?"

"Do you find from a preponderance of the evidence that the plaintiff, Claude Monk relied on this custom when he sent a check to pay the premium due March 5, 1935?"

Upon the answers so returned the court entered judgment against appellant and in favor of C. L. Monk for himself and John Lovell for $1,000 and costs.

### Opinion.

1. Appellant insists that the court erred in entering judgment in favor of appellee because, as appellant insists, while he was a creditor of the community estate, his claim was not a personal charge against the wife. Under the facts of this case it is immaterial as to whether she might have been charged personally. Mr. Monk's demand was a valid claim against the community estate of decedent and husband. It was so recognized by the husband when he authorized Monk to pay the premiums as they fell due. The claim arose out of credits extended for groceries, medicines, shoes, farm supplies, and money advanced for premiums paid defendant on said policy. The account for necessaries covered the critical period that intervened between the summer of 1929 and the autumn of 1931, as well as advances thereafter made to carry the insurance policy herein involved as well as a policy on the life of the husband. It seems that appellee did this with several customers, in each instance carrying the policy so long as the customer was in his debt.

■ When appellee brought suit, he did so for himself, as well as for the use and benefit of the surviving husband. He was not claiming adversely to the survivor, whose right it was to collect the community estate and apply it to the satisfaction of community debts, even to the exclusion of the heirs, whose rights would attach only to one-half of the excess remaining after the debts were paid. The manner in which the suit was brought was evidently agreeable to and in accord with the wishes of the husband, for he testified in behalf of plaintiff. The surviving husband is the one person to be consulted as to the disposition of the fund. The contract of insurance was made with the community. The cost of carrying it is a charge against the survivor. The beneficiary is recognizing his rights as he should. Moody v. Smoot, 78 Tex. 119, 14 S. W. 285; Carter et al. v. Conner, 60 Tex. 52; Stone v. Jackson, 109 Tex. 385, 210 S. W. 953.

■ Apt answer to appellant's challenge of the right of appellee to recover may be found in the language used by Judge Stayton in Pacific Mutual Life Ins. Co. v. Williams, 79 Tex. 633, 637, 15 S.W. 478, 480: "The question thus raised is not one of ultimate right to the money to be recovered, but of right of appellee to maintain this action; and it has been held in many cases, under policies like that involved in this case, that the person named by the assured and insurer in the policy as the person to whom the sum secured by the policy shall be paid, may maintain an action on the policy without reference to the interest of such person in the life of the assured. [Provident Life] Insurance Co. v. Baum, 29 Ind. [236] 240; [Guardian Mutual Life] Insurance Co. v. Hogan, 80 Ill. [35] 39 [22 Am.Rep. 180]; Campbell v. Insurance Co., 98 Mass. [381] 389; Fairchild v. Association, 51 Vt. [613] 625; Forbes v. Insurance Co., 15 Gray, [(Mass.) 249] 255 [77 Am.Dec. 360]. In [Provident Life] Insurance Co. v. Baum it was said: 'It is not for the insurance com-

pany, after executing such a contract, and agreeing to the appointment so made, to question the right of such appointee to maintain the action. If there should be a controversy as to the distribution, among the heirs of the deceased, of the sum so contracted to be paid, it does not concern the insurers. The appellant contracted with the insured to pay the money to the appellee, and, upon such payment being made, it will be discharged from all responsibility. So far as the insurance company is interested, the contract is effective as an appointment of the appellee to receive the sum insured.'"

In this case it might be added that appellee had an interest to the amount of the premiums advanced.

The cases cited by appellant are readily distinguishable by their respective statements of fact; and appellant is, we think, in error in assuming that a surviving husband was plaintiff in Richardson v. Corley (Tex.Civ.App.) 86 S.W.(2d) 1091, as the court uses the masculine pronoun when referring to the decedent.

■ 2. Appellant's defense, in part, was, as stated heretofore, that it forfeited the policy because the premium due March 5, 1935, was not paid on that day. Appellee pleaded that he mailed his check to appellant March 4, 1935, one day before it became due in pursuance of a practice existing between appellee and appellant, alleging that it was the established custom that appellant should accept appellee's checks upon the Crockett State Bank, and that they were so accepted from the beginning; that it was the custom of defendant to accept such checks in payment of said assessments when they were mailed the day before the assessments became due and on a number of occasions as long as two or three days after they became due, and that it rejected the check sent on March 4, 1935, in disregard of its habit and practice, and without excuse, because, as appellee alleged, it then learned that Irene C. Lovell was in bad health; and that said check was received by appellant March 5, 1935, or in any event not later than March 6, 1935. The allegation that the payments were made in pursuance of the practice countenanced by appellant is a sufficient allegation of reliance upon a continuation of the general course of appellant in this regard. Appellant in its brief contended that the pleading in respect to custom and reliance was insufficient. However, it filed no exceptions to this pleading, but urged an objection to question No. 1. For the reasons stated we think the objection was without merit.

■ 3. The first issue as submitted was not duplicitous. The undisputed facts showed the practice followed. Checks for premiums were introduced showing dates of issuance and payment as follows: one dated April 7, 1934, paid April 14, 1934; one dated August 4, 1934, paid August 10, 1934; one dated September 5, 1934, paid September 8, 1934; one dated November 7, 1934, paid November 10, 1934; one dated December 5, 1934, paid December 8, 1934. The first check to be returned for any cause was the one issued March 4, 1935. Two others issued April 4, 1935, were likewise returned. By letter dated March 6, 1935, defendant refused to receive the check dated two days earlier, and therein stated that it had been "just received." The undisputed evidence was that no complaint was made by appellant as to this method of making payments. Appellee testified that he relied upon this manner of dealing with the company in paying the assessments. A reason for this indulgence may be inferred from the fact that appellee had carried policies of others of his customers in the same manner. Though he did this for his own protection, his system had benefited appellant by producing business for it. Appellant had waived the provisions requiring payment promptly on time. In the face of its own utter disregard of the provisions when disregard was profitable, the stereotyped notices in constant use were ineffective to evidence a change of mind. They cannot be given such effect in view of appellant's contemporaneous conduct in receiving without protest checks dated two and three days after due dates of assessments, and in cashing one as late as five days and another as late as eight days after such due date. If appellant intended to rely upon the letter of the contract, it should, in all good faith, have so warned insured's recognized agent prior to the time it changed its attitude. It should not have waited until illness made the insured an undesirable risk. Forfeitures are not favored, and surely one should not be allowed in the face of such misleading practices relied upon by appellant. Farm & Home Savings & Loan Ass'n v. Landau (Tex.Civ.App.) 48 S.W.(2d) 777; Supreme Lodge, etc., v. Hooper (Tex.Civ.App.) 282 S.W. 867, 868; First Texas State Insurance Co. v. Capers (Tex.Civ.App.) 183 S.W. 794.

■ 4. Error is assigned to the failure of the court to define the word "custom" as used in question No. 1. No definition was submitted by appellant to the trial court, but this was one of the grounds of objection to the submission of the issue. The assignment lacks merit. It is clear from the context, as well as from the pleading and evidence to which the issue relates (and, which, we hold, were sufficient to justify its submission), that the word "custom" was used in its popular and not in its technical legal sense. Lawyer and lexicographer agree that in its popular sense it is synonymous with "mode" or "practice" or "course of action." Chicago, etc., Ry. Co. v. Murray, 40 Wyo. 324, 277 P. 703; Collins v. Chicago & N. W. R. Co., 150 Wis. 305, 136 N.W. 628; Fletcher v. Baltimore, etc., R. Co., 168 U.S. 135, 18 S.Ct. 35, 42 L.Ed. 411.

■ 5. Question No. 2 did not assume that the custom inquired about had existed. The jury· was instructed not to answer this question if it returned a negative answer to No. 1. Appellant's objections thereto were without merit.

The court committed no reversible error in overruling the objections to the charge.

All assignments of error are overruled, and the judgment of the trial court is affirmed.